Filed 6/18/12

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
    Plaintiff and Respondent, )
) S181963
    v. )
) Ct.App. 3 C056510
JAMES LEE BROWN III, )
) Lassen County
    Defendant and Appellant. ) Super. Ct. No. CR024002
_____)

Since 1976, Penal Code section 4019[1] has offered prisoners in local custody the opportunity to earn "conduct credit" against their sentences for good behavior. Conduct credits encourage prisoners to conform to prison regulations, to refrain from criminal and assaultive conduct, and to participate in work and other rehabilitative activities. (*People v. Austin* (1981) 30 Cal.3d 155, 163.) For eight months during 2010, a now-superseded version of section 4019[2] that was enacted during a state fiscal emergency temporarily increased the rate at which local prisoners could earn conduct credits. We granted review to decide whether this former statute (hereafter former section 4019) retroactively benefits prisoners who

_____

[1] (Stats. 1976, ch. 286, § 4; all further citations to statutes are to the Penal Code, except as noted.)

[2] (Stats. 2009, 3d Ex. Sess., ch. 28, § 50, subsequently amended by Stats. 2010, ch. 426, § 2, Stats. 2011, ch. 15, § 482, Stats. 2011, ch. 39, § 53, and Stats. 2011, 1st Ex. Sess., ch. 12, § 35.)

1

served time in local custody before January 25, 2010, the date on which it became operative.[3]  We hold that former section 4019 applied prospectively, meaning that qualified prisoners in local custody first became eligible to earn credit for good behavior at the increased rate beginning on the statute's operative date.  We also hold that the equal protection clauses of the federal and state Constitutions (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a)) do not require retroactive application.

## I. BACKGROUND

Defendant James Lee Brown III was convicted of selling methamphetamine, a controlled substance (Health & Saf. Code, § 11379, subd. (a)), and sentenced to three years in state prison.  The court awarded defendant a total of 92 days of credits, representing 62 days of credits for actual time spent in local custody awaiting trial and sentencing (§ 2900.5, subd. (a)) and 30 days of conduct credits for good behavior (§ 4019).  The version of section 4019 in effect during defendant's local custody, and also on the date he was sentenced, entitled him to two days of conduct credit for every four days spent in local custody.[4]  Defendant was sentenced and committed to state prison on July 24, 2007.

---

[3]     Former section 4019 remained in effect only until September 28, 2010, when the Legislature further amended the statute to restore the original, lower credit-earning rate.  (Stats. 2010, ch. 426, § 2.)  Thereafter, the Legislature amended the statute yet again to raise the rate.  (Stats. 2011, ch. 15, § 482, eff. April 4, 2011.)

[4]     The relevant language of the version of section 4019 in effect during 2007 provided:  "It is the intent of the Legislature that if all days are earned under this section, *a term of six days will be deemed to have been served for every four days spent in actual custody*."  (§ 4019, subd. (f), as amended by Stats. 1982, ch. 1234, § 7, p. 4554, italics added [subsequently amended as noted *ante*, at p. 1, fn. 2].)

On October 11, 2009, the Governor signed the bill enacting former section 4019, operative January 25, 2010, increasing the rate at which prisoners in local custody could earn conduct credits for good behavior. Under the new formula, eligible prisoners could earn two days of conduct credit for every two days spent in local custody.[5] The Court of Appeal affirmed defendant's conviction on January 13, 2010. On January 29, 2010, four days after former section 4019 took effect, defendant filed a petition for rehearing claiming additional conduct credits under the statute. The Court of Appeal granted the petition, vacated its earlier decision, and issued a new decision on March 16, 2010, awarding defendant additional conduct credits, retroactively covering the entire 62 days he had spent in local custody some two and one-half years earlier (from May 23, 2007 to July 24, 2007) before being committed to state prison.

We granted respondent's petition for review challenging the Court of Appeal's decision to apply former section 4019 retroactively. In his answer, defendant raised an additional issue (see Cal. Rules of Court, rule 8.504(c), arguing that equal protection also requires retroactive application. Respondent, who agrees we should decide the additional issue, argues to the contrary. We address that issue as well. (*Id.*, rule 8.516 (b)(1).)

---

**5** The relevant language of former section 4019 provided: "It is the intent of the Legislature that if all days are earned under this section, *a term of four days will be deemed to have been served for every two days spent in actual custody* . . . ." (Former § 4019, italics added.)

Prisoners who were required to register as sex offenders, had been committed for serious felonies, or had prior convictions for serious or violent felonies, were not eligible for credit at the increased rate. (Former § 4019, subds. (b)(2), (c)(2).) The Legislature deleted these restrictions in 2010. (See Stats. 2010, ch. 426, § 2.)

3

## II. DISCUSSION

### A. Statutory Construction

*1. Section 3 and the Presumption that Statutes Operate Prospectively.*

Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent. When the Legislature has not made its intent on the matter clear with respect to a particular statute, the Legislature's generally applicable declaration in section 3 provides the default rule: "No part of [the Penal Code] is retroactive, unless expressly so declared." We have described section 3, and its identical counterparts in other codes (e.g., Civ. Code, § 3; Code Civ. Proc., § 3), as codifying "the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208-1209 (*Evangelatos*); see also *id.*, at p. 1208 [requiring " 'express language or [a] clear and unavoidable implication [to] negative[] the presumption' "].) In applying this principle, we have been cautious not to infer retroactive intent from vague phrases and broad, general language in statutes. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 229-230; see *Evangelatos*, at p. 1209, fn. 13.) Consequently, " 'a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective.' " (*Myers v. Phillip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841, quoting *I.N.S. v. St. Cyr* (2001) 533 U.S. 289, 320-321, fn. 45.)

These principles require us to reject defendant's argument that former section 4019 applies retroactively as a matter of statutory construction. The statute contains no express declaration that increased conduct credits are to be awarded retroactively, and no clear and unavoidable implication to that effect arises from

4

the relevant extrinsic sources, i.e., the legislative history. Before addressing these points in detail, we briefly review that history.

On December 19, 2008, the Governor exercised his constitutional powers to declare a fiscal emergency and to call the Legislature into special session to address the emergency. (Governor's Exec. Order No. S-16-08 (Dec. 19, 2008); see Cal. Const., art. IV, § 10, subd. (f)(1).) The bill that would become former section 4019 (Sen. Bill No. 18 (2009-2010 3d Ex. Sess.)) was introduced and passed in special session for that purpose. Much of the lengthy bill was directed to measures that would save the state money by reducing jail and prison populations. Increasing the rate at which prisoners in local custody could earn conduct credits was one such measure.[6] As mentioned, however, the Legislature did not expressly declare whether former section 4019 was to operate prospectively or retroactively. We thus proceed to consider whether it is "very clear from extrinsic sources" (*Evangelatos*, *supra*, 44 Cal.3d 1188, 1209), or whether such sources support the " 'clear and unavoidable implication' " (*id.*, at p. 1208), that the Legislature intended the amendment to operate retroactively. We find no such indicia of legislative intent.

Defendant argues we can infer the Legislature's intent to apply former section 4019 retroactively from the same act's uncodified section 59. Section 59 directs "[t]he Department of Corrections and Rehabilitation [to] implement the changes made by this act regarding time credits in a reasonable time," but also

---

[6]     Former 4019 had the additional purpose of equalizing the rate at which prisoners in local and state custody could earn conduct credits. (See, e.g., Assem. Com. on Budget, Analysis of Sen. Bill No. 18 (2009-2010, 3d Ex. Sess.), as amended Aug. 31, 2009, p. 1 [bill would "[e]stablish[] consistent day-for-day credit earning status for offenders currently eligible for earning day-for-day credit in both jail and prison"].)

recognizes and addresses the possibility that "there will be some delays in determining the amount of additional time credits . . . resulting from changes in law pursuant to this act."[7]  This language, defendant contends, shows the Legislature intended that presentence conduct credits under former section 4019 would apply retroactively and accepted the likelihood that retroactive application would entail administrative delay.  Defendant's argument might be plausible if the term "time credits" in section 59 referred to presentence conduct credits, but this cannot be what the Legislature meant.  The California Department of Corrections and Rehabilitation (CDCR) does not determine and award presentence credits; the sentencing court does.[8]  Accordingly, the Legislature's reference in section 59 to

---

[7]      In full, section 59 provides:  "The Department of Corrections and Rehabilitation shall implement the changes made by this act regarding time credits in a reasonable time.  However, in light of limited case management resources, it is expected that there will be some delays in determining the amount of additional time credits to be granted against inmate sentences resulting from changes in law pursuant to this act.  An inmate shall have no cause of action or claim for damages because of any additional time spent in custody due to reasonable delays in implementing the changes in the credit provisions of this act.  However, to the extent that excess days in state prison due to delays in implementing this act are identified, they shall be considered as time spent on parole, if any parole period is applicable."  (Stats. 2009, 3d Ex. Sess., ch. 28, § 59.)

[8]      While the CDCR does not determine and award *presentence* credits, the CDCR does determine and award credits earned in local custody, if any, after sentencing and before delivery to state prison.  (See § 2900.5, subd. (e).)  But these credits cannot have been the antecedent of section 59's reference to "time credits," because section 59 expressly affected only *the changes made by this act regarding time credits* (Stats. 2009, 3d Ex. Sess., ch. 28, § 59, italics added), namely, the 2009 act that also added former section 4019.  The 2009 act did not affect credits under section 2900.5, subdivision (e), which have existed unchanged since 1991.  (See Stats. 1991, ch. 437, § 9, p. 2217.)

For a one-year period following the repeal of former section 4019, the CDCR did determine and award local conduct credits for persons eventually sentenced to state prison.  (See former § 2933, subd. (e)(1), added by Stats. 2010,

*(Footnote continued on next page.)*

"time credits" must have been to credits determined and awarded by the CDCR, namely post-sentence credits earned in state prison, such as the credits mandated by the same act retroactive to January 1, 2003, for inmates trained as firefighters. (§ 2933.3, subds. (a), (d), as amended by Stats. 2009, 3d Ex. Sess., ch. 28, § 41.)

Defendant also argues the Legislature's intent to apply former section 4019 retroactively may be inferred from the circumstance that a state fiscal emergency prompted the legislation,[9] because awarding credits retroactively would decrease the state's incarceration costs more than would awarding them prospectively. Certainly, as we have explained, the legislation that included former section 4019 was most immediately intended as a response to the state's fiscal crisis. But the *method* by which the Legislature chose to respond was not to grant early release or credits regardless of conduct, even though this would have offered the greatest economic benefit to the state, but rather to increase the existing incentives for good conduct by offering well behaved prisoners the prospect of even earlier release from custody.[10] Defendant suggests the Legislature might have intended

*(Footnote continued from previous page.)*

ch. 426, § 1, eff. Sept. 28, 2010, and repealed by Stats. 2011, 1st Ex. Sess., ch. 12, § 16, eff. Sept. 21, 2011.) The now-repealed provision giving the CDCR that responsibility did not exist at the time the Legislature enacted section 59 and thus could not have informed the meaning of that provision.

[9] See the uncodified section 62: "This act addresses the fiscal emergency declared by the Governor by proclamation on December 19, 2008, pursuant to subdivision (f) of Section 10 of Article IV of the California Constitution." (Stats. 2009, 3d Ex. Sess., ch. 28, § 62.)

[10] Prisoners earn such credits by not "refus[ing] to satisfactorily perform labor as assigned by the sheriff, chief of police, or superintendent of an industrial farm or road camp" (§ 4019, subd. (b)) and by "satisfactorily comply[ing] with the reasonable rules and regulations established by [the same authorities]" (*id.*, subd. (c)).

former section 4019 to offer bonuses for past good behavior as well as incentives for future good behavior. Such an interpretation of the statute, however, finds no clear support in the statute's language or legislative history. To resolve such ambiguities in favor of prospective operation is precisely the function of section 3 and the default rule it embodies.

To apply former section 4019 prospectively necessarily means that prisoners whose custody overlapped the statute's operative date (Jan. 25, 2010) earned credit at two different rates. Defendant contends such a result is impermissible because a court may apply only the version of section 4019 in effect at the time sentence is imposed (or modified on appeal). Defendant bases this argument on section 2900.5, which requires the sentencing court to determine and include in the abstract of judgment the presentence credits to which a defendant is entitled (*id.*, subd. (d)), including days "credited to the period of confinement *pursuant to Section 4019*" (§ 2900.5, subd. (a), italics added). Defendant thus reads the italicized reference to section 4019 as meaning "the version of section 4019 currently in effect." Defendant's reading would violate section 3 by causing any legislative change in the credit-accrual rate to operate retroactively without an express declaration of retroactive intent. Furthermore, nothing in the legislative history of section 2900.5, the relevant language of which has remained unchanged since 1991 (see Stats. 1991, ch. 437, § 10, p. 2218), suggests the Legislature intended the statute to have such an effect. Credits are determined and added to the abstract of judgment at the time of sentencing, but they are *earned* day by day over the course of a defendant's confinement as a predefined, expected reward for specified good behavior. Having been earned, credits obtain a kind of permanency, as they may not be lost except for misconduct. (See generally *People v. Deusler* (1988) 203 Cal.App.3d 273, 275-277; Cal. Rules of Court, rule

8

4.310; cf. § 2932.) Defendant's reading of section 2900.5 ignores these considerations.[11]

For all of these reasons, we conclude former section 4019 is properly interpreted as operating prospectively.

### 2. The Estrada[12] rule.

This court's decision in *Estrada*, *supra*, 63 Cal.2d 740, supports an important, contextually specific qualification to the ordinary presumption that statutes operate prospectively:  When the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent

---

[11]    In his answer brief, defendant advanced the new claim that a short-lived 2010 amendment to section 2933 entitles him to additional conduct credits for his time in local custody, even if former section 4019 does not.  Former section 2933, subdivision (e)(1) (added by Stats. 2010, ch. 426, § 1, eff. Sep. 28, 2010, and repealed by Stats. 2011, 1st Ex. Sess., ch. 12, § 16, eff. Sept. 21, 2011), directed the CDCR, "[n]otwithstanding section 4019," to deduct one day from the sentence of a state prisoner "for every day he or she served in a county jail [or other local facility] from the date of arrest until state prison credits . . . are applicable . . . ."  This new claim is not properly before us, and we do not address it.  Instead of identifying an error in the judgment on review, defendant asserts *the CDCR* violated former section 2933 by failing to award additional local conduct credits at the time the former section took effect.  Such a claim must logically be brought in a petition for habeas corpus against the official empowered to award such credits, namely the Director of the CDCR.

In a supplemental brief, defendant contended he is entitled to retroactive presentence conduct credits under an amendment to section 4019 enacted in the 2011 Realignment Legislation addressing public safety.  (See Stats. 2011, ch. 15, § 482.)  This legislation does not assist defendant because its changes to presentence credits expressly "apply *prospectively* . . . to prisoners who are confined to a county jail [or other local facility] *for a crime committed or after October 1, 2011*."  (§ 4019, subd. (h), added by Stats. 2011, ch. 15, § 482, and amended by 2011, ch. 39, § 53.)  Defendant committed his offense in 2006.

[12]    *People v. Estrada* (1965) 63 Cal.2d 740 (*Estrada*).

9

evidence to the contrary,[13] that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date. (*Id.*, at pp. 742-748.) We based this conclusion on the premise that " '[*a*] *legislative mitigation of the penalty for a particular crime* represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law." (*Id.*, at p. 745, italics added.) " 'Nothing is to be gained,' " we reasoned, " 'by imposing the more severe penalty after such a pronouncement . . . other than to satisfy a desire for vengeance' " (*ibid.*) — a motive we were unwilling to attribute to the Legislature. On this basis we concluded the inference was "inevitable . . . that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Ibid.*)

Defendant contends the special rule of *Estrada*, *supra*, 63 Cal.2d 740, requires us to apply former section 4019 retroactively, even though the statute offers incentives for future good behavior in prison rather than " 'mitigat[ing] the penalty for a particular crime' " (*Estrada*, at p. 745). We conclude defendant is incorrect: *Estrada* does not apply. Before examining defendant's contention in detail, however, we note the limited role *Estrada* properly plays in our jurisprudence of prospective versus retrospective operation.

As mentioned, the language of section 3 erects a strong presumption of prospective operation, codifying the principle that, "in the absence of an express

---

**13** (E.g., *In re Pedro T.* (1994) 8 Cal.4th 1041, 1045-1046 [holding *Estrada*, *supra*, 63 Cal.2d 740 inapplicable to statute automatically reducing the penalty for an offense after three years (a "sunset provision"), given evidence the Legislature wished to experiment with an increased penalty during the interim].)

retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application." (*Evangelatos*, *supra*, 44 Cal.3d 1188, 1209; see *Myers v. Phillip Morris Companies, Inc.*, *supra*, 28 Cal.4th 828, 841.) Accordingly, " 'a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective.' " (*Myers v. Phillip Morris Companies, Inc.*, *supra*, at p. 841.) Sharply departing from the language of section 3, the court in *Estrada*, *supra*, 63 Cal.2d 740, wrote that the "rule of construction [codified therein] . . . is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent." (*Estrada*, at p. 746.)

One immediately sees that the quoted language from *Estrada*, *supra*, 63 Cal.2d 740, purports (a) to justify retroactive operation on evidence of less dignity and reliability than the express legislative declaration, or clear implication from extrinsic evidence, that we now require under section 3 (see *Evangelatos*, *supra*, 44 Cal.3d 1188, 1208, 1209), and (b) to reduce section 3's strong presumption of prospectivity to a tie-breaking principle of last resort. Applied broadly and literally, *Estrada*'s remarks about section 3 would thus endanger the default rule of prospective operation. Recognizing this in *Evangelatos*, we declined to follow *Estrada*'s remarks about section 3 and held that "language in *Estrada* . . . should not be interpreted as modifying this well-established, legislatively-mandated principle" (*Evangelatos*, at p. 1209). (*Evangelatos*, at p. 1209; see generally *ibid.*, at pp. 1207-1209 & fn. 11.) Accordingly, *Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified

11

in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments. (Cf. *People v. Nasalga* (1996) 12 Cal.4th 784, 792, fn. 7 [declining request to reconsider *Estrada*].)

This brings us to the question whether the rule of *Estrada*, *supra*, 63 Cal.2d 740, requires us to apply retroactively a statute increasing the rate at which prisoners may earn credit for good behavior. The question can properly be answered only in the negative. The holding in *Estrada* was founded on the premise that " '[a] legislative mitigation of the penalty *for a particular crime* represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law' " (*Estrada*, at p. 745, italics added) and the corollary inference that the Legislature intended the lesser penalty to apply to crimes already committed.[14] In contrast, a statute increasing the rate at which prisoners may earn credits for good behavior does not represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent. Former section 4019 does not alter the penalty for any crime; a prisoner who earns no conduct credits serves the full sentence originally imposed. Instead of addressing punishment for past criminal conduct, the statute addresses *future conduct* in a custodial setting by providing increased incentives for good behavior.

Defendant contends the rule of *Estrada*, *supra*, 63 Cal.2d 740, should be understood to apply more broadly to any statute that reduces punishment in any

---

[14] The statute at issue in *Estrada*, *supra*, 63 Cal.2d 740, reduced the minimum term for the crime of escape without force or violence. (See *id.*, at pp. 743-744.)

12

manner, and that to increase credits is to reduce punishment. Defendant's argument fails for two reasons: First, the argument would expand the *Estrada* rule's scope of operation in precisely the manner we forbade in *Evangelatos*, *supra*, 44 Cal.3d 1188, 1209. Second, the argument does not in any event represent a logical extension of *Estrada*'s reasoning. We do not take issue with the proposition that a convicted prisoner who is released a day early is punished a day less. But, as we have explained, the rule and logic of *Estrada* is specifically directed to a statute that represents " 'a legislative mitigation of the *penalty for a particular crime*' " (*Estrada*, at p. 745, italics added) because such a law supports the inference that the Legislature would prefer to impose the new, shorter penalty rather than to " 'satisfy a desire for vengeance' " (*ibid.*). The same logic does not inform our understanding of a law that rewards good behavior in prison.[15]

Various older decisions address claims that statutes affecting credits should be applied retroactively. In none do we find a sufficient justification for applying the rule of *Estrada*, *supra*, 63 Cal.2d 740, to former section 4019.

Cases involving *custody* credit — credit for time served (*In re Kapperman* (1974) 11 Cal.3d 542, *People v. Sandoval* (1977) 70 Cal.App.3d 73, and *People v. Hunter* (1977) 68 Cal.App.3d 389) — may properly be distinguished as

---

**15** Defendant suggests the Legislature's desire to reduce punishment through former section 4019 can be inferred from its intent to equalize the credit-earning ability of state and local prisoners. (See *ante*, at p. 5, fn. 6.) As noted above, we do not take issue with the proposition that to increase credits reduces punishment. The question is whether such a law falls within the rule of *Estrada*, *supra*, 63 Cal.2d 740. It does not, as we have explained. Furthermore, to recognize the Legislature wished to equalize credits does not, by itself, provide a logical basis for inferring the Legislature wished to do so *retroactively*.

13

irrelevant.[16] Credit for time served is given without regard to behavior, and thus does not implicate the distinction between statutes that provide behavioral incentives (e.g., conduct credits) and statutes that "mitigat[e] . . . the penalty for a particular crime" (*Estrada*, *supra*, 63 Cal.2d 740, 745).

Of the prior cases involving *conduct* credits, the two most closely on point conflict. Defendant relies on *People v. Doganiere* (1978) 86 Cal.App.3d 237 (*Doganiere*), which cited *Estrada*, *supra*, 63 Cal.2d 740, as authority for applying a statute authorizing conduct credits retroactively. The defendant in *Doganiere*, who was serving a sentence in state prison, had previously served time in county jail as a condition of probation, earning local conduct credits under section 4019 and thus release from jail a month before the end of his probationary term. He subsequently violated the terms of his probation and was committed to state prison. Applying the version of section 2900.5 then in effect (§ 2900.5, as amended by Stats. 1976, ch. 1045, § 2, p. 4465), the court gave defendant credit against his prison sentence for the time he had actually served in jail but not for the conduct credits he had there earned. While the appeal was pending, the Legislature amended section 2900.5 to require the deduction of local conduct credits under section 4019. (See former § 2900.5, as amended by Stats. 1978,

---

**16** California law did not always give, to all persons serving sentences in state prison, credit for time served in local custody before sentencing. Effective 1972, in a statute that was expressly prospective, the Legislature extended such credits to persons convicted of felonies. (Former § 2900.5, as added by Stats. 1971, ch. 1732, § 2, p. 3686.) In *In re Kapperman*, *supra*, 11 Cal.3d 542, this court held the statute's prospectivity provision violated equal protection and applied the statute retroactively. The court distinguished *Estrada*, *supra*, 63 Cal.2d 740, as irrelevant, reading that opinion, as do we, to affect only "the application to previously convicted offenders of statutes lessening the *punishment for a particular offense*." (*In re Kapperman*, *supra*, at p. 546, italics added.)

ch. 304, § 1, p. 632.)  In deciding to apply *Estrada*, the Court of Appeal perfunctorily rejected the argument that the rule of that case does not apply to a statute "designed to control *future* prison inmate behavior" (*Doganiere*, at p. 239), as opposed to a statute reducing the punishment for a specific offense.  We find *Doganiere* unpersuasive because it offers no authority for its conclusion other than an irrelevant decision involving *custody* credits.  (See *Hunter*, *supra*, 68 Cal.App.3d 389, cited in *Doganiere*, at p. 239; but see *Kapperman*, *supra*, 11 Cal.3d 542, 546; *ante*, at p. 13 & fn. 16.)  A subsequent decision that merely accepted *Doganiere*'s holding without examination (*People v. Smith* (1979) 98 Cal.App.3d 793, 799) adds no force to defendant's position.

More persuasive is *In re Strick* (1983) 148 Cal.App.3d 906 (*Strick*), a case that, while ultimately decided under the equal protection clause, necessarily examined the legislative purpose underlying conduct credits and concluded that statutes authorizing such credits must logically apply prospectively.

The petitioner in *Strick*, *supra*, 148 Cal.App.3d 906, who had served two and one-half years of a six-year sentence, had earned conduct credits under a former statute permitting the Director of the former Department of Corrections to reduce a prisoner's sentence by one-third for good behavior.  (See former § 2931, subd. (a), as amended by Stats. 1979, ch. 319, § 1, p. 1141.)  During defendant's prison term, the Legislature adopted a new statute offering conduct credits at a higher rate.  (See former § 2933, subd. (a), as added by Stats. 1982, ch. 1234, § 4, p. 4551.)  The director, exercising his statutory authority to make rules governing the transition of inmates from the old to the new credit systems, determined that credit at the new, higher rate would be granted prospectively but not retroactively. The Court of Appeal rejected the petitioner's claim that the Director's decision violated equal protection.  Prisoners whose incarcerations began before and after the new law took effect, the court reasoned, were not similarly situated with

15

respect to the purpose of the law: "The obvious purpose of the new section," the court explained, "is to affect the behavior of inmates by providing them with incentives to engage in productive work and maintain good conduct while they are in prison. . . . [¶] It is fair to observe that this incentive purpose has no meaning if an inmate is unaware of it. The very concept demands prospective application. 'Reason dictates that it is impossible to influence behavior after it has occurred.' " (*Id.*, at p. 913, quoting *In re Stinnette* (1979) 94 Cal.App.3d 800, 806.)[17]

Arguing his point a bit differently, defendant suggests the Legislature has acquiesced in prior judicial decisions retroactively applying statutes increasing credits and, as a result, generally intends that such statutes apply retroactively unless the legislation expressly requires prospective operation. The argument is unpersuasive for several reasons. First, we have recognized that the doctrine of legislative acquiescence is not properly invoked to show the Legislature has acquiesced in judicial decisions applying *judicial doctrines*, such as the rule of *Estrada*, *supra*, 63 Cal.2d 740. When a precedent is challenged as incorrectly extending such a doctrine, "it is primarily up to the courts to reconsider its correctness." (*People v. Superior Court (Sparks)* (2010) 48 Cal.4th 1, 21.) Second, the "proverbial 'weak reed' " of legislative acquiescence (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1107) cannot reasonably be stretched so far as to abrogate *another statute*, such as section 3 and the default rule of prospective

---

[17]    *In re Stinnette*, *supra*, 94 Cal.App.3d 800, the decision quoted in *Strick*, *supra*, 148 Cal.App.3d 906, held that equal protection did not require the retroactive application of a provision (former § 2931, subd. (a), as amended by Stats. 1977, ch. 165, § 38, p. 661) of the newly enacted Determinate Sentencing Act (Stats. 1976, ch. 1139) authorizing the award of conduct credits for good behavior to persons sentenced under that act but not to persons committed under the prior Indeterminate Sentence Law (Stats. 1917, ch. 527, § 1, p. 665).

operation the statute embodies, in an entire category of cases.  Third, the only cases that might conceivably support defendant's argument, as applied to conduct credits, are *Doganiere*, *supra*, 86 Cal.App.3d 237, and *People v. Smith*, *supra*, 98 Cal.App.3d 793.  But one might with equal validity argue the Legislature has acquiesced in the more recent conclusion in *Strick*, *supra*, 148 Cal.App.3d 906, 913, that the "[t]he very concept [of conduct credits] requires prospective application."

In conclusion, we see in the relevant prior decisions no justification for applying the rule of *Estrada*, *supra*, 63 Cal.2d 740, to former section 4019.  We therefore turn to defendant's argument that equal protection principles require retroactive application regardless of legislative intent and statutory construction.

### B. Equal Protection

Defendant contends that to apply former section 4019 prospectively violates the equal protection clauses of the state and federal Constitutions.  (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).)  The argument lacks merit.

 The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)  Accordingly, " '[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' " (*Ibid.*)  "This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' " (*Ibid.*)

As we have already explained, the important correctional purposes of a statute authorizing incentives for good behavior (see *People v. Austin*, *supra*, 30 Cal.3d 155, 163) are not served by rewarding prisoners who served time before the

17

incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows. On this point we find the decision in *Strick*, *supra*, 148 Cal.App.3d 906, persuasive. In that case, as noted (*ante*, at p. 15 et seq.), the Court of Appeal rejected the claim that an expressly prospective law increasing conduct credits violated equal protection unless applied retroactively to prisoners who had previously earned conduct credits at a lower rate. "The obvious purpose of the new section," the court reasoned, "is to affect the behavior of inmates by providing them with incentives to engage in productive work and maintain good conduct while they are in prison." (*Strick*, at p. 913.) "[T]his incentive purpose has no meaning if an inmate is unaware of it. The very concept demands prospective application." (*Ibid.*) "Thus, inmates were only similarly situated with respect to the purpose of the [new law] on [its effective date], when they were all aware that it was in effect and could choose to modify their behavior accordingly." (*Ibid.*)

Defendant and amicus curiae contend this court's decision in *People v. Sage* (1980) 26 Cal.3d 498 (*Sage*), implicitly rejected the conclusion the Court of Appeal would later reach in *Strick*, *supra*, 148 Cal.App.3d 906, that prisoners serving time before and after a conduct credit statute takes effect are not similarly situated. We disagree.

The defendant in *Sage*, *supra*, 26 Cal.3d 498, a case decided three years before *Strick*, *supra*, 148 Cal.App.3d 906, had been committed to the state hospital under the mentally disordered sex offender law (former Welf. & Inst. Code, § 6316 et seq., repealed by Stats. 1981, ch. 928, § 2, p. 3485) and, after being found not amenable to treatment, sentenced to state prison for a felony. The question before the court was whether the defendant was entitled to conduct credit for the time he had spent in county jail before being sentenced. The version of

18

section 4019 then in effect (§ 4019, as amended by Stats. 1978, ch. 1218, § 1, p. 3941) authorized presentence conduct credit for misdemeanants who later served their sentences in county jail but not for felons who were eventually sentenced to state prison. Finding no "rational basis for, much less a compelling state interest in, denying presentence conduct credit to detainee/felons" (*Sage*, at p. 508, fn. omitted), the court held the statute's unequal treatment of felons and misdemeanants for this purpose violated equal protection. (*Ibid*.)

To be sure, one practical effect of *Sage*, *supra*, 26 Cal.3d 498, was to extend presentence conduct credits retroactively to detainees who did not expect to receive them, and whose good behavior therefore could not have been motivated by the prospect of receiving them. But amicus curiae reads too much into *Sage* by suggesting the opinion thereby implicitly foreclosed the Court of Appeal's later conclusion in *Strick*, *supra*, 148 Cal.App.3d 906, that prisoners serving time before and after incentives are announced are not similarly situated. The unsigned lead opinion "by the Court" in *Sage* does not mention the argument that conduct credits, by their nature, must apply prospectively to motivate good behavior. A brief allusion to that argument in a concurring and dissenting opinion (see *Sage, supra,* at p. 510 (conc. & dis. opn. of Clark, J.)) went unacknowledged and unanswered in the lead opinion. As cases are not authority for propositions not considered (e.g., *People v. Avila* (2006) 38 Cal.4th 491, 566), we decline to read *Sage* for more than it expressly holds.

Defendant and amicus curiae also contend the present case is controlled by *In re Kapperman*, *supra*, 11 Cal.3d 542, in which this court concluded that equal protection required the retroactive application of an expressly prospective statute granting credit to felons for time served in local custody before sentencing and commitment to state prison. We disagree. Credit for time served is given without regard to behavior, and thus does not entail the paradoxical consequences of

19

applying retroactively a statute intended to create incentives for good behavior. *Kapperman* does not hold or suggest that prisoners serving time before and after the effective date of a statute authorizing *conduct* credits are similarly situated.

For these reasons, we conclude that equal protection does not require former section 4019 to be applied retroactively.

## III. DISPOSITION

The Court of Appeal's judgment is reversed and the case remanded to that court for further proceedings in accordance with this opinion.

WERDEGAR, J.


WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
BAXTER, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

20

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v Brown
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 182 Cal.App.4th 1354
**Rehearing Granted**

_____

**Opinion No.** S181963
**Date Filed:** June 18, 2012
_____

**Court:** Superior
**County:** Lassen
**Judge:** Stephen Douglas Bradbury

_____

**Counsel:**

Mark J. Shusted, under appointment by the Supreme Court, for Defendant and Appellant.

Dallas Sacher for Sixth District Appellate Program as Amicus Curiae on behalf of Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell and Gary W. Schons, Assistant Attorneys General, Carlos A. Martinez, Marcia A. Fay, Steven T. Oetting and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Mark J. Shusted
P.O. Box 1076
Roseville, CA  95678
(916) 804-5106

Meredith S. White
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2297