Filed 6/25/13  P. v. Juarez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055235 |
| v. | (Super.Ct.No. FSB056525) |
| DAVID MICHAEL JUAREZ, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Bryan Foster, Judge.  Affirmed with directions.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Anthony Da Silva and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I. INTRODUCTION

In November 2011, a jury found defendant David Michael Juarez guilty of the first degree murder of Diana Burch. (Pen. Code, § 187, subd. (a).)[1] The murder occurred around April 10, 1989, over 20 years before trial. Defendant was sentenced to 25 years to life in prison.

Defendant principally claims that the court violated his federal due process rights and section 1369 when, on March 13, 2009, the court did not immediately conduct a hearing on defendant's competency to stand trial, even though it had just received the report of Randall Norris, Ph.D., a court-appointed psychologist, that defendant was incompetent to stand trial. Rather than immediately conduct the hearing, the court granted the prosecution's request to appoint another psychologist, Steven Jenkins, Ph.D., to assess defendant. After Dr. Jenkins reported that defendant was competent, the court appointed a third expert, Kenneth Fischer, Ph.D., to assess defendant. After Dr. Fischer reported that defendant was competent, the court conducted the competency hearing and the jury found defendant competent. Defendant was later tried and found guilty of the murder. We find no due process or statutory violation in the court's refusal to conduct the competency hearing until after Drs. Jenkins and Fischer evaluated defendant. (§ 1369, subds. (a), (c); see *Baqleh v. Superior Court* (2002) 100 Cal.App.4th 478, 489-490.)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Defendant further claims, and the People agree, that defendant's presentence custody credits were improperly calculated, and that defendant should have been awarded 3,243 total credits rather than 2,901 total credits. We agree and modify the judgment to award defendant the additional presentence custody credits. In all other respects, we affirm the judgment.

## II. FACTS AND PROCEDURAL HISTORY

### A. *The Murder of Diana Burch*

On April 11, 1989, the body of 19-year-old Diana Burch was found in a green duffel bag at a turnout along Highway 330. Defendant's initials "DJ" were on the duffel bag, and his DNA matched semen taken from the victim's vagina and skin found underneath the victim's fingernails. Defendant's DNA was also consistent with DNA found on the duffel bag and on an electrical cord around the victim's neck. During a January 2006 police interview, defendant admitted that he killed a person who offered him sex in exchange for drugs, around 17 years earlier. In June 2006, defendant was charged with the murder of Burch.

### B. *Proceedings Concerning Defendant's Competency to Stand Trial*

On February 28, 2007, defense counsel (Wright) told the court that he doubted defendant's competency to stand trial. The court then suspended the criminal proceedings and appointed a mental health professional, Abraham Argun, Ph.D., to evaluate defendant. On April 3, 2007, the court adopted Dr. Argun's written opinion that defendant was competent to stand trial and reinstated the criminal proceedings.

3

On September 24, 2007, defense counsel (Drake) declared a new doubt as to defendant's competency to stand trial. Members of defendant's family were in court and, according to defense counsel, indicated that defendant had "a long history of mental health issues." The court again suspended the proceedings and appointed another mental health professional, Robert Postman, Ph.D., to evaluate defendant. On October 23, 2007, after reviewing Dr. Postman's written opinion that defendant was not competent to stand trial and required psychotropic medications to be restored to competency, the court declared defendant incompetent, and the criminal proceedings remained suspended.

On November 16, 2007, the court ordered that defendant be committed to Patton State Hospital (PSH) until his mental competence was restored (with a maximum three-year time of commitment) and that PSH administer antipsychotic (psychotropic) medication, involuntarily if necessary. On February 22, 2008, after reviewing a PSH progress report, the court ordered that defendant be retained and treated at PSH. On July 7, 2008, after reviewing PSH reports and a certificate of mental competence, the court found that defendant's competency had been restored and reinstated the criminal proceedings.[2]

On December 9, 2008, the court proceeded with the preliminary examination and bound defendant over on the murder charge.

---

[2] Defendant expressly waived his right to confront witnesses on the PSH progress report, and defense counsel joined in the waiver.

On December 16, 2008, defendant entered pleas of not guilty and not guilty by reason of insanity on the murder charge, and the court appointed two doctors, Jungyeol Oh, Ph.D. and Michael Perrotti, Ph.D., to evaluate defendant's sanity at the time of the offense. (§§ 1368, 1026.) In his report, Dr. Oh determined that defendant required involuntary antipsychotic medications, and stated that defendant was probably sane at the time of the offense, but it was not possible to render a more concrete analysis of his sanity because he refused to be more forthcoming. Dr. Perrotti also concluded that it was not possible to determine defendant's sanity at the time of the offense. Dr. Perrotti noted that defendant's thoughts were disorganized and his ability to reason was so impaired that he would be unable to testify on his own behalf.

On February 20, 2009, after reviewing the reports of Drs. Oh and Perrotti, defense counsel and the court declared doubts as to defendant's competency, and the court again suspended criminal proceedings. The court then appointed a new mental health professional, Dr. Norris, to evaluate defendant. (§ 1368.)

On March 13, 2009, after reviewing Dr. Norris's report that defendant was incompetent to stand trial and required psychiatric hospitalization, the court kept criminal proceedings in suspension and, after granting the People's request for "a second doctor evaluation," appointed another doctor—Dr. Jenkins—to evaluate defendant. The court rejected defense counsel's request to adopt Dr. Norris's evaluation and recommit defendant to PSH. The prosecutor asked that the second evaluation be conducted because defendant had already been committed to PSH where his competency had been restored.

5

On April 3, 2009, after reviewing Dr. Jenkins's report that defendant was competent to stand trial and noting that the reports of Drs. Norris and Jenkins reached "opposing conclusions" concerning defendant's competency, the court appointed a third mental health professional, Dr. Fischer, to evaluate defendant. Like Dr. Jenkins, Dr. Fischer concluded that defendant was competent to stand trial. On May 14, 2009, defense counsel told the court he was unwilling to stipulate to Dr. Fischer's report and demanded a jury trial on defendant's competency. The court initially set the jury trial on July 13, 2009.

Following several continuances, the jury trial on defendant's competency was held on January 26 to 28, 2010. After hearing testimony from several health professionals, including Drs. Norris, Jenkins, and Fischer, the jury determined that defendant was competent to stand trial.

## III. DISCUSSION

Defendant claims that the court violated his federal due process rights and state law (§ 1367 et seq.) in refusing to *immediately* try the issue of his competency to stand trial, when, on March 13, 2009, the court received the written report of Dr. Norris that defendant was incompetent to stand trial. We find this claim utterly without merit.

### A. *Applicable Law*

Federal due process principles and state statutory law prohibit the state from trying or convicting a criminal defendant while he is mentally incompetent. (*Drope v. Missouri* (1975) 420 U.S. 162, 181; *People v. Rogers* (2006) 39 Cal.4th 826, 846-847.) A

defendant is incompetent to stand trial if he lacks a "'"sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding"'" and "'"a rational as well as a factual understanding of the proceedings against him."' [Citations.]" (*People v. Rogers, supra,* at pp. 846-847; § 1367.)[3]

"[A]n accused has a constitutional right to a hearing on present sanity if he comes forward with substantial evidence that he is incapable, because of mental illness, of understanding the nature of the proceedings against him or of assisting in his defense. Once such substantial evidence appears, a doubt as to the sanity of the accused exists, no matter how persuasive other evidence—testimony of prosecution witnesses or the court's own observations of the accused—may be to the contrary." (*People v. Pennington* (1967) 66 Cal.2d 508, 518; *Pate v. Robinson* (1966) 383 U.S. 375, 383-386.) The defendant has the burden of proving his incompetency by a preponderance of the evidence. (§ 1369, subd. (f); *People v. Marks* (2003) 31 Cal.4th 197, 215.)

The court's decision whether or not to hold a competency hearing is entitled to deference, because the court has the opportunity to observe the defendant. (*People v. Rogers, supra,* 39 Cal.4th at p. 847.) "The failure to declare a doubt and conclude a hearing when there is substantial evidence of incompetency, however, requires reversal of the judgment of conviction." (*Ibid.*; *Drope v. Missouri, supra,* 420 U.S. at p. 181.)

---

[3] Section 1367, subdivision (a), provides: "A person cannot be tried or adjudged to punishment while that person is mentally incompetent. A defendant is mentally incompetent . . . if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

California's *procedure* for determining a defendant's competence to stand trial is a creature of statute. (See §§ 1368, 1369.) As pertinent, section 1369 states: "A trial by court or jury of the question of mental competence shall proceed in the following order: [¶] (a) The court shall appoint a psychiatrist or licensed psychologist, *and any other expert the court may deem appropriate*, to examine the defendant. In any case where the defendant or the defendant's counsel informs the court that the defendant is not seeking a finding of mental incompetence, the court shall appoint two psychiatrists, licensed psychologists, or a combination thereof. One of the psychiatrists or licensed psychologists may be named by the defense and one may be named by the prosecution. . . ." (Italics added.)

B. *Analysis*

Defendant maintains that the trial court violated his federal due process rights and state law when, on March 13, 2009, and after reviewing Dr. Norris's March 9, 2009, report that he was incompetent to stand trial, the court refused to immediately conduct a jury trial to determine his competency and instead appointed two more experts, Drs. Jenkins and Fischer, to assess his competency.

As defendant points out, Dr. Norris's report constituted substantial evidence that defendant was incompetent to stand trial, and was sufficient to trigger defendant's federal due process and state statutory right to a hearing or jury trial on his competency. (*People v. Pennington, supra,* 66 Cal.2d at pp. 518-519.) But this does not mean that the court violated defendant's federal due process rights or state law in appointing Dr. Jenkins, or

8

in later appointing Dr. Fischer, to further evaluate defendant's competency before conducting the jury trial on defendant's competency.

To the contrary, and as the People point out, defendant "received precisely what the [C]onstitution demanded: a hearing as to his competence." (*People v. Pennington, supra,* 66 Cal.2d at p. 518.) Further, nothing in the statutory scheme governing competency proceedings (§ 1367 et seq.) prohibited the court from appointing the additional experts to evaluate defendant's competency before conducting the competency hearing, even though Dr. Norris's report constituted substantial evidence that defendant was not competent and triggered the court's duty to conduct a competency hearing. (§§ 1367-1369; *People v. Pennington, supra,* at p. 518.)

As indicated, section 1369 states that "[t]he court shall appoint a psychiatrist or licensed psychologist, *and any other expert the court may deem appropriate*, to examine the defendant." (§ 1369, subd. (a), italics added.) Ostensibly, the statute authorized the trial court to appoint Drs. Jenkins and Fischer to examine defendant *before* the court conducted the competency hearing. In addition, section 1369, subdivision (c), states that "[t]he prosecution shall present its case regarding the issue of the defendant's present mental competence," and specifically contemplates that the prosecutor may present expert testimony of defendant's competency. (See *Baqleh v. Superior Court, supra,* 100 Cal.App.4th at pp. 489-490 [§ 1369 authorizes the court to order a defendant to submit to mental competency examination by an expert retained by the prosecution].)

C. *Additional Presentence Custody Credits*

Defendant claims, and the People agree, that defendant's presentence custody credits were erroneously calculated, and that defendant is entitled to additional presentence custody credits. We agree.

As the parties explain, defendant was correctly awarded 1,935 days of actual custody credits and should have been awarded 1,308 conduct credits, rather than 966 conduct credits, for total credits of 3,243 days, rather than total credits of 2,901 days. Defendant was taken into custody on August 23, 2006. At that time and until January 25, 2010, section 4019 specified that a defendant would accrue two days of conduct credit for every four days in local custody. (*People v. Brown* (2012) 54 Cal.4th 314, 318.) Effective January 25, 2010, section 4019 was amended to provide for two days of conduct credit for every two days in local custody. (*People v. Brown, supra,* at p. 318.) Thus, a defendant in continuous custody before and after January 25, 2010, accrued conduct credits at two different rates. (*Id.* at p. 322.)

Defendant therefore earned 1,251 actual credits and 624 conduct credits from August 23, 2006, through January 25, 2010. After January 25, 2010, he earned 684 actual days credit and 684 days conduct credits. He should have been awarded total credits of 3,243 days, not 2,901 days, or 342 additional conduct credits.

## IV. DISPOSITION

The judgment is modified to award defendant 3,243 total days of presentence custody credits, consisting of 1,935 actual days plus 1,308 conduct days. The matter is

10

remanded with directions to amend defendant's abstract of judgment to reflect this modification, and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


KING
J.


We concur:

RAMIREZ
P. J.

MILLER
J.