Filed 12/18/13  P. v. Ruiz CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GERALD RUIZ,<br><br>Defendant and Appellant. | F064711<br><br>(Super. Ct. Nos. F11905339 &<br>F11904566)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

Donna J. Hooper, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Cornell, Acting P.J., Kane, J. and Oakley, J.[†]

[†]     Judge of the Madera Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Defendant Gerald Ruiz contends the trial court erred by not sentencing him to county jail rather than prison pursuant to the Realignment Act (Stats. 2011, ch. 15, § 1). We will affirm.

## PROCEDURAL SUMMARY

Defendant was charged in two different cases on August 8, 2011, and September 16, 2011.

On January 6, 2012, he pled no contest to various offenses, including felony possession of a concealed dirk or dagger (former Pen. Code, § 12020, subd. (a)(4), now § 21310).[1]

On February 7, 2012, the trial court sentenced him pursuant to former section 1170, subdivision (h) of the Realignment Act to a total term of 28 months, half to be served in jail and half on mandatory supervision.

On March 16, 2012, however, the trial court issued an order prohibiting defendant's release because he should not have been sentenced under section 1170, subdivision (h), due to his conviction for possession of a concealed dirk or dagger. The court resentenced defendant to a total term of 28 months in prison.[2]

## DISCUSSION

On April 4, 2011, the Governor approved the "2011 Realignment Legislation addressing public safety" (Stats. 2011, ch. 15, § 1), which, together with subsequent related legislation, significantly changed the sentencing and supervision of persons

---

[1]    All statutory references are to the Penal Code unless otherwise noted.

[2]    Even though defendant's other offenses were eligible for Realignment Act sentencing, every offense must be eligible for a defendant to be sentenced under the Realignment Act.  (§ 1170.1, subd. (a).)

2.

convicted of felony offenses.[3]  With certain exceptions, a felon sentenced under the Realignment Act is committed to county jail instead of state prison (§ 1170, subd. (h)(1), (2)), may have a concluding portion of his sentence suspended in lieu of probation (§ 1170, subd. (h)(5)), and is not subject to parole (§ 3000 et seq.).  Felony possession of a concealed dirk or dagger (former § 12020, subd. (a)(4)) was not initially subject to sentencing under the Realignment Act.  Operative January 1, 2012, section 12020, subdivision (a)(4), was repealed and renumbered as section 21310, as part of a reorganization without substantive change, but it was still not made subject to Realignment Act sentencing.  (Former § 21310; Stats. 2010, ch. 711, § 6.)  Then, a few months after defendant was sentenced to prison, and before his judgment was final, the Legislature amended section 21310 to make it subject to Realignment Act sentencing, with an operative date of June 27, 2012.  (§ 21310; Stats. 2012, ch. 43 (Sen. Bill No. 1023), § 94.)

Defendant contends the amended version of section 21310, allowing for a county jail commitment pursuant to section 1170, subdivision (h), of the Realignment Act, should have been applied retroactively to him under the rule of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), which states that an amendatory statute that mitigates punishment and has no saving clause will operate retroactively so that the lighter punishment is imposed (*id.* at p. 748).[4]

*Estrada* explained:  "There is one consideration of paramount importance.  It leads inevitably to the conclusion that the Legislature must have intended, and by necessary implication provided, that the amendatory statute should prevail.  When the Legislature

---

**3**     Our reference to the Realignment Act includes the initial enactment and subsequent legislation collectively.  The Realignment Act applies to persons sentenced on or after October 1, 2011.  (§ 1170, subd. (h)(6).)

**4**     A saving clause expressly states when the statute applies.  (See *People v. Cruz* (2012) 207 Cal.App.4th 664, 672.)

amends a statute *so as to lessen the punishment* it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act.  It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.  The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final.  This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*Estrada, supra,* 63 Cal.2d at pp. 744-745, italics added.)

Our conclusion here is that the amended version of section 21310 does not mitigate punishment within the meaning of *Estrada* and therefore is not retroactive.  We come to this conclusion despite the possibility that sentencing under the Realignment Act may effectively lessen punishment by allowing a hybrid sentence of jail and probation and by not requiring parole.

We find the recent case of *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*) instructive.  There, the defendant contended the rule of *Estrada* required that former section 4019 apply retroactively.  (*Brown, supra,* at pp. 323-324.)  The *Brown* court disagreed and concluded that *Estrada* did not apply.  (*Id.* at p. 324.)  The court stressed "the limited role *Estrada* properly plays in our jurisprudence of prospective versus retrospective operation.  [¶]  [T]he language of section 3[5] erects a strong presumption of prospective operation, codifying the principle that, 'in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear

---

**5**    Section 3 states that "[n]o part of [the Penal Code] is retroactive, unless expressly so declared."

from extrinsic sources that the Legislature … must have intended a retroactive application.' [Citations.] Accordingly, '"a statute that is ambiguous with respect to retroactive application is construed … to be unambiguously prospective."' [Citation.] Sharply departing from the language of section 3, the court in *Estrada*, *supra*, 63 Cal 2d 740, wrote that the 'rule of construction [codified therein] … is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent.' [Citation.] [¶] One immediately sees that the quoted language from *Estrada* … purports (a) to justify retroactive operation on evidence of less dignity and reliability than the express legislative declaration, or clear implication from extrinsic evidence, that we now require under section 3 [citation], and (b) to reduce section 3's strong presumption of prospectivity to a tie-breaking principle of last resort. Applied broadly and literally, *Estrada*'s remarks about section 3 would thus endanger the default rule of prospective operation. Recognizing this …, we declined to follow *Estrada*'s remarks about section 3 and held that 'language in *Estrada* … should not be interpreted as modifying this well-established, legislatively-mandated principle[.]' [Citations.] Accordingly, *Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments. [Citation.]" (*Brown, supra,* at p. 324.)

The *Brown* court then turned to the question of whether the rule of *Estrada* required retroactive application of section 4019, a statute that increased the rate at which prisoners could earn credit for good behavior. The court stated: "The question can properly be answered only in the negative. The holding in *Estrada* was founded on the

5.

premise that "'[a] legislative mitigation of the penalty *for a particular crime* represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law"' [citation] and the corollary inference that the Legislature intended the lesser penalty to apply to crimes already committed. [The court noted that the statute at issue in *Estrada* reduced the minimum term for the crime of escape without force or violence.] In contrast, a statute increasing the rate at which prisoners may earn credits for good behavior does not represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent. Former section 4019 does not alter the penalty for any crime; a prisoner who earns no conduct credits serves the full sentence originally imposed. Instead of addressing punishment for past criminal conduct, the statute addresses *future conduct* in a custodial setting by providing increased incentives for good behavior." (*Brown, supra,* 54 Cal.4th at p. 325, fn. omitted.)

The *Brown* court also rejected the defendant's argument that *Estrada* "should be understood to apply more broadly to any statute that reduces punishment in any manner, and that to increase credits is to reduce punishment." (*Brown, supra,* 54 Cal.4th at p. 325.) The court explained: "We do not take issue with the proposition that a convicted prisoner who is released a day early is punished a day less. But, as we have explained, the rule and logic of *Estrada* is specifically directed to a statute that represents "'a legislative mitigation of the *penalty for a particular crime*"' [citation] because such a law supports the inference that the Legislature would prefer to impose the new, shorter penalty rather than to "'satisfy a desire for vengeance"' [citation]. The same logic does not inform our understanding of a law that rewards good behavior in prison." (*Ibid.*, fn. omitted.)

As in *Brown*, we conclude that *Estrada* does not apply in this case because the Realignment Act does not constitute ""'[a] legislative mitigation of the penalty *for a particular crime* [that] represents a legislative judgment that the lesser penalty or the

6.

different treatment is sufficient to meet the legitimate ends of the criminal law"'"" (*Brown, supra,* 54 Cal.4th at p. 325). The Realignment Act does not alter the sentences for the felonies it embraces, including possession of a concealed dirk or dagger. Furthermore, the Legislature's stated intent in passing the Realignment Act did not include mitigation of punishment. Instead, the Legislature "reaffirm[ed] its commitment to *reducing recidivism* among criminal offenders" (§ 17.5, subd. (a)(1), italics added), and declared that "[r]ealigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs, which are strengthened through community-based punishment, evidence-based practices, improved supervision strategies, and enhanced secured capacity, will *improve public safety outcomes among adult felons and facilitate their reintegration back into society*" (*id.*, subd. (a)(5), italics added). The Legislature also declared its budgetary interest, stating that "[f]iscal policy and correctional practices should align to *promote a justice reinvestment strategy* that fits each county. 'Justice reinvestment' is a data-driven approach to *reduce corrections and related criminal justice spending and reinvest savings in strategies designed to increase public safety*. The purpose of justice reinvestment is to *manage and allocate criminal justice populations more cost-effectively*, generating savings that can be reinvested in evidence-based strategies that *increase public safety while holding offenders accountable.*" (*Id.*, subd. (a)(7), italics added.) And the Legislature noted that "'[e]vidence-based practices' refers to supervision policies, procedures, programs, and practices demonstrated by scientific research to *reduce recidivism among individuals under probation, parole, or post release supervision.*" (*Id.*, subd. (a)(9), italics added.)

In light of the explicit language of section 3 and the lack of any express Legislative intent that the Realignment Act reduce punishment, we conclude that the Realignment Act does not represent a "legislative mitigation of the penalty for a particular crime" (*Estrada, supra,* 63 Cal.2d at p. 745), even though it has potential to

7.

favorably affect a felony sentence.  Accordingly, section 21310 should not be applied retroactively.

## **<u>DISPOSITION</u>**

The judgment is affirmed.