Filed 5/9/13  P. v. Cardinalli CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H036513 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. FF721011) |
| v. | |
| VINCENT BRUCE CARDINALLI, | |
| Defendant and Appellant. | |

Defendant Vincent Bruce Cardinalli appeals a judgment of conviction entered following his plea of no contest to 100 counts of theft and fraud-related offenses. Defendant and members of his family, including his son and daughter, operated a tow truck business and a small claims law suit mill through which they used fabricated car towing and storage fee bills to defraud people.

On appeal, defendant asserts he is entitled to additional conduct credits under the amended provisions of Penal Code section 4019.[1]  In addition, defendant argues the trial court erred in failing to order his daughter, who is one of his codefendants, jointly and severally liable for the restitution award to the victims in this case.

---

[1] All further statutory references are to the Penal Code, unless otherwise noted.

Defendant and his son, Paul Greer, owned and operated a tow truck company, B & C Towing. Greer also owned a collection agency that operated out of the same address as the tow truck company.

Defendant and Greer created a scheme in which defendant would target people he became aware of through the towing business, and bring small claims actions against them based on unpaid towing and storage fees that were fabricated. Defendant presented false evidence in small claims court of the unpaid fees, and when he obtained a judgment, he assigned it to Greer's collection agency. Defendant and Greer together extorted or attempted to extort payments from victims by threatening to ruin their credit, put liens on their property, and garnish their wages.

As a result of filing over 800 actions in small claims court in three different counties, defendant and Greer reaped hundreds of thousands of dollars in judgments.

Defendant and Greer were the primary actors involved in this scheme. Also involved, however, were defendant's daughter, Rosemary Ball and his son-in-law, Michael Ball. Rosemary was the corporate secretary and an employee of B & C Towing. Her name and signature appear on some of the lien paperwork assigning small claims judgments to the Greer collection agency. Michael was the co-founder of the towing company. He filed papers initiating 25 of the small claims lawsuits during 2003.

In 2009, defendant, Greer and Rosemary and Michael Ball were all charged with crimes related to the false small claims actions. Defendant was charged with a total of 100 counts, including conspiracy to defraud persons of property or to obtain money by false pretenses, and to obstruct justice and due administration of the laws (§§ 182, subds. (a)(4), (a)(5)); count 1), subornation of perjury by declaration (§ 127; counts 2-

---

[2] The facts are derived from the record of the preliminary hearing, there having been no trial in this case. The probation report contains no factual summary.

38), recording a false instrument (§ 115; counts 39-45), certification under penalty of perjury (§ 118; counts 46-51, 53, 56-90), embezzlement by trustee, attorney or agent (§§ 506-487; count 52), attempted grand theft of personal property of value over $400 (§§ 484-487, subd. (a), 664; counts 54-55, 95, 97-99), attempted extortion (§ 524; counts 91-93), extortion of property (§§ 518-520; count 94), offering forged or altered document as genuine or true (§ 132; count 96), unauthorized practice of law (Bus. & Prof. Code, § 6126, subd. (a)). The information also alleged defendant had a strike prior (§§ 667, subds. (b)-(i); 667.4, subd. (c)).

Rosemary Ball was charged with conspiracy to defraud a person of property or obtain money and property by false pretenses, and to obstruct justice and due administration of the laws (§§ 182, subds. (a)(4), (a)(5)); count 1), attempted grand theft of personal property of a value of over four hundred dollars (§§ 484-487, subd. (a), 664; count 134), and certification under penalty of perjury (§ 118; count 158).

Defendant pleaded no contest to all of the allegations pursuant to a negotiated disposition. On January 7, 2011, the court dismissed defendant's strike prior pursuant to *People v. Romero* (1996) 13 Cal.4th 497, and sentenced defendant to 14 years in state prison. The court awarded defendant 1,645 days of custody credits, based on 1,097 actual days, and 548 days of conduct credit pursuant to section 4019.

Rosemary Ball pleaded no contest to the three charges alleged against her in exchange for an agreement that she would not be sent to state prison. On January 7, 2011, the court suspended imposition of sentence, and ordered Rosemary to serve six months in county jail as a condition of probation.

During the sentencing hearing, the court ordered defendant to pay restitution to the victims, most of which was also ordered against Greer jointly and severally. Defendant requested that Rosemary also be held jointly and severally liable for all of the victim restitution imposed against him based on Rosemary's plea of no contest to conspiracy in

3

count 1. The court denied defendant's request to include Rosemary Ball, stating that the decision was "due to apportionment."

**DISCUSSION**

Defendant argues on appeal that he is entitled to additional conduct credits pursuant to the amendments to section 4019. In addition, he asserts the trial court erred in apportioning zero liability for victim restitution to his daughter, Rosemary Ball.

*Section 4019*

In his opening brief, defendant argued that he was entitled to additional conduct credit under the current version of section 4019, and that the amendments to the statute should be applied retroactively. Defendant relied on two appellate court cases that subsequently were reversed by the California Supreme Court. (See, *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*); *People v. Lara* (2012) 54 Cal.4th 896 (*Lara*).)

In his reply brief, defendant acknowledges that these two opinions from our high court are controlling and preclude his claim for additional conduct credit. However, in order to preserve his right to federal review, he maintains his argument that his federal constitutional rights to Equal Protection have been violated by the prospective application of the amendments to section 4019.

The current version of section 4019 generally provides that a defendant may earn conduct credit at a rate of two days for every two-day period of actual custody. (§ 4019, subds. (b), (c) & (f).) However, as defendant acknowledges, the current version of section 4019 states that the conduct credit rate "shall apply prospectively and shall apply to prisoners who are confined to a county jail [or other local facility] for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).) In this case, defendant committed his crimes and was sentenced prior to October 1, 2011. Thus the October 2011 version of section 4019, which provides for prospective application, does

4

not apply to defendant.  (§ 4019, subd. (h); *Brown, supra*, 54 Cal.4th at p. 322, fn. 11)

"The concept of equal protection recognizes that persons who are *similarly situated* with respect to a law's legitimate purposes must be treated equally.  [Citation.] Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." ' [Citation.]  'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citation.]" (*Brown, supra*, 54 Cal.4th at p. 328.)

The decision in *Brown* is instructive on the equal protection issue raised by defendant in this case.  In *Brown*, the California Supreme Court held that a former version of section 4019, effective January 25, 2010, applied prospectively, and that the equal protection clauses of the state and federal Constitutions did not require retroactive application.  (*Brown, supra*, 54 Cal.4th at pp. 318, 328.)  In addressing the equal protection issue, the court explained that "the important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after [the January 2010 version of] section 4019 took effect are not similarly situated necessarily follows." (*Brown*, *supra*, at pp. 328-329.)

Subsequently, in *Lara, supra,* 54 Cal.4th 896, the California Supreme Court rejected the contention that the prospective application of the October 2011 version of section 4019 denied the defendant equal protection under the state and federal Constitutions.  (*Lara, supra*, at p. 906, fn. 9.)  Citing *Brown*, the California Supreme Court in *Lara* explained that prisoners who serve their pretrial detention before the effective date of a law increasing conduct credits, and those who serve their detention

5

thereafter, "are not similarly situated with respect to the law's purpose." (*Lara, supra*, at p. 906, fn. 9.)

In this case, defendant is not entitled to additional conduct credit under the October 2011 version of section 4019 by virtue of state or federal equal protection principles. (*See Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

### *Restitution*

Defendant asserts the trial court erred when it failed to apportion any of the responsibility for the restitution owed to the victims in this case to defendant's daughter, Rosemary Ball.

California Constitution, article I, section 28, provides, in pertinent part: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes for losses they suffer." " 'In determining the amount of restitution, all that is required is that the trial court "use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious." ' " (*People v. Prosser* (2007) 157 Cal.App.4th 682, 690.)

Section 1202.4, subdivision (a)(1) provides that "[i]t is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." Subdivision (f) of the same section provides that "[t]he court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record."

" 'The standard of review of a restitution order is abuse of discretion. "A victim's restitution right is to be broadly and liberally construed." [Citation.] " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse

6

of discretion will be found by the reviewing court.' " [Citations.]' [Citation.]" (*People v. Baker* (2005) 126 Cal.App.4th 463, 467.)

While the trial court has the authority to order codefendants to share joint and several liability for restitution to crime victims, it has no obligation to do so. (See, e.g., *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1535.) The court has discretion to apportion the responsibility for restitution among multiple defendants, including ordering joint and several liability or finding one defendant among several to be solely responsible. (*In re S.S.* (1995) 37 Cal.App.4th 543, 548-550.) "Indeed, joint and several liability may not be preferable in all cases involving codefendants." (*People v. Arnold* (1994) 27 Cal.App.4th 1096, 1100.)

Here, while defendant asserts his daughter should be held jointly and severally liable for the restitution owed to the victims, he does not demonstrate that the trial court abused its discretion in making the restitution order in this case.

There is ample evidence that defendant and his son, Greer were the driving force of the towing and small claims operation, and that apportioning defendant 100 percent liability for the restitution to the victims was a proper exercise of judicial discretion. Defendant's daughter, Rosemary Ball was the corporate secretary and an employee of the towing company, and her name appears on a small amount of paperwork that was used to support the small claims mill. While she did plead no contest to conspiracy as did defendant and Greer, her zero apportionment of liability for restitution was well within the court's discretion based on the facts of this case.

We find based on the record that there is a factual and rational basis for the restitution ordered by the trial court, as well as the joint and several liability of defendant and Greer. The trial court did not abuse its discretion in making the restitution order in this case.

7

## DISPOSITION

The judgment is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
ELIA J.

8