Filed 6/5/15  P. v. Galaz CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060972 |
| v. | (Super.Ct.No. FWV1302304) |
| ANTOINETTA P. GALAZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Stanford E. Reichert, Judge.  Affirmed.

Thomas S. Macomber, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood, and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

In May 2013, defendant Antoinetta P. Galaz shoplifted merchandise worth about

1

$108 from an Old Navy store. In March 2014, a jury convicted defendant of one count of second degree commercial burglary in violation of Penal Code section 459.[1] After waiving the right to a jury trial, defendant admitted a prior prison term conviction pursuant to section 667.5, subdivision (b). In April 2014, the trial court sentenced defendant to four years in county jail and imposed a $750 appointed counsel fee and a $505 probation cost fee.

On appeal, defendant challenges the trial court's imposition of fees and asks this court to reverse defendant's felony conviction in view of Proposition 47, which was enacted in November 2014,[2] after defendant was sentenced in April 2014. We reject defendant's contentions and affirm the judgment.

II

FACTUAL STATEMENT

A. *Prosecution's Evidence*

On May 30, 2013, defendant entered an Old Navy store in Rancho Cucamonga with a friend, Carla Carpenter, and her child. Defendant was carrying a white Old Navy bag that "was worn and wrinkled" and appeared to be empty. That particular style of bag was used only during the holiday season between October 2012 and January 2013.

Isabel Valdivia, a loss prevention agent with Old Navy, saw defendant place several items in a shopping cart and a mesh bag supplied by Old Navy. Valdivia then

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] We grant defendant's request for judicial notice filed November 20, 2014. (Evid. Code, §§ 452, 453, and 459.)

observed defendant "grabbing merchandise from the mesh bag and placing it inside the white Old Navy bag." Valdivia contacted deputy sheriff Melinda Young to alert her that defendant and Carpenter were shoplifting. Eventually, defendant and Carter left the store without paying.

Deputy Young initiated a traffic stop of defendant and Carpenter's vehicle. Valdivia arrived at the scene and positively identified defendant and Carpenter. A white Old Navy bag, filled with clothing, was found behind the driver's seat. Valdivia verified the clothing was Old Navy merchandise. Valdivia estimated defendant stole merchandise worth $108.64 and Carpenter stole merchandise worth $205.22.

B. *Defendant's Testimony*

Defendant testified that she entered the store with the same clothing later found in her possession. She stated the bag was not empty but was filled with items purchased by her boyfriend that were too small. Defendant claimed the bag had been given to her boyfriend when he purchased the items from another Old Navy store a few days before May 30, 2013. Defendant said she intended to exchange the items but was unable to find suitable substitutes.

C. *The Probation Interview*

In March 2014, defendant told the probation officer she had been unemployed for 10 years. She was receiving food stamps in the monthly amount of $186, and she was paid under the table as a hair stylist. Defendant, who was pregnant, planned to finish cosmetology school, raise her children, and become financially stable. The probation officer reported to the trial court "defendant does have the present ability to pay

3

appointed counsel fees in the amount of $750.00" and "defendant has the present ability to pay the cost of conducting the pre-sentence investigation and preparing the report pursuant to Section 1203.1b of the Penal Code. Therefore the defendant is ordered to pay $505.00 . . . ."

*D. The Trial Court's Findings*

The trial court expressly found defendant had the ability to pay the appointed counsel fee and the cost of the presentence investigation report: "The Court finds that you have the ability to pay appointed counsel fees in the amount of $750 through Central Collections. [¶] The Court finds you have the present ability to pay the cost of conducting the pre-sentence investigation and preparing the report pursuant to Penal Code section 1203.1(b). The Court orders you to pay $505 through Central Collections." The trial court did not expressly explain its findings but defendant's public defender did not object to the imposition of these fees.

III

APPPOINTED COUNSEL AND PROBATION FEES

Although defendant contends that the trial court erred in assessing the $505 fee for probation costs (§1203.1, subd. (b)) and the $750 fee for appointed counsel costs (§ 987.8), the record shows the court actually made an express finding defendant had the ability to pay the fees without explaining its reasoning. Defendant also contends there was insufficient evidence of her ability to pay. The People contend that defendant forfeited her claims by failing to object below.

4

*A. Forfeiture*

The California Supreme Court recently addressed the forfeiture issue with respect to the subject fees in the companion cases of *People v. Trujillo* (2015) 60 Cal.4th 850 and *People v. Aguilar* (2015) 60 Cal.4th 862.[3]  The preceding case of *People v. McCullough* (2013) 56 Cal.4th 589, concerning forfeiture of objection to a booking fee, is no longer pertinent on this point in light of these two subsequent decisions.

In *Trujillo*, the Supreme Court found a defendant had forfeited an objection to a probation fee by not objecting at sentencing.  *Trujillo* unreservedly held a defendant has the burden "to assert noncompliance with section 1203.1b in the trial court as a prerequisite to challenging the imposition of probations costs on appeal . . . ." (*People v. Trujillo, supra,* 60 Cal.4th at p. 858.)  In reaching its conclusion, the Supreme Court noted that important constitutional rights were not at stake:  "Thus, unlike cases in which either statute or case law requires an affirmative showing on the record of the knowing and intelligent nature of a waiver, in this context defendant's counsel is in the best position to determine whether defendant has knowingly and intelligently waived the right to a court hearing.  It follows that an appellate court is not well positioned to review this question in the first instance." (*Id.* at p. 860.)  The Supreme Court also noted that a defendant is not wholly without recourse, setting forth numerous methods by which a defendant can have this issue addressed by the probation department or sentencing court. (See *id.* at pp. 860-861.)

---

[3] We asked the parties to submit supplemental briefs on *Trujillo* and *Aguilar*.

5

In supplemental briefing defendant's appellate counsel conceded that *Trujillo* resolves the issue of forfeiture as it concerns probation fees. Based on *Trujillo* and defendant's concession, we conclude defendant forfeited her claim to challenge the probation cost fee in the appellate court.

Defendant continues to argue, however, that the trial court erred in assessing $750 to pay appointed counsel fees. Defendant specifically complains that the court failed to provide her with an ability-to-pay hearing, and there is no substantial evidence to justify the fee. The People again argue that defendant has forfeited her challenge because she failed to object when the court imposed that fee.

In spite of a defendant's failure to object, some courts are reluctant to find forfeiture in light of the unusual nature of attorney fees awards in criminal cases and because the Legislature extensively protects defendants with procedural minimums that trial courts must follow before imposing such fees. (*People v. Pacheco* (2010) 187 Cal.App.4th 1392, 1397, overruled in part on another ground in *People v. McCullough, supra,* 56 Cal.4th at pages 598-599; *People v. Viray* (2005) 134 Cal.App.4th 1186, 1214-1216.) The *Viray* court identified the concerns that it may be inequitable to find forfeiture based on an attorney's failure to object to his own fees; the conflict of interest between the attorney and the client's pecuniary interests militates against a finding of forfeiture. (*Viray,* at pp. 1215-1216.)

In *Aguilar*, the trial court had imposed an appointed counsel fee of $500 and a presentence investigation report fee of $176. (*People v. Aguilar, supra,* 60 Cal.4th at p. 865.) The defendant argued that the trial court exceeded its discretion because it failed to

6

make a finding regarding the defendant's ability to pay. (*Ibid.*) As to the presentence investigation report fee, the Supreme Court, as in *Trujillo*, rejected the defendant's argument and held that a "defendant's failure to challenge the fees in the trial court precludes him from doing so on appeal." (*Id.* at p. 864.)

The *Aguilar* court declined to address the issue of forfeiture in the context of appointed counsel fees: "This case does not present, and we therefore do not address, the question of whether a challenge to an order for payment of the cost of the services of appointed counsel is forfeited when the failure to raise the challenge at sentencing may be attributable to a conflict of interest on trial counsel's part." (*People v. Aguilar, supra*, 60 Cal.4th at p. 868, fn. 4.)

In this case, however, the issue of a conflict of interest is not supported by the record. Defendant was represented by a public defender who receives a salary that is not dependent on defendant paying it. The reimbursement fee does not go to defense counsel but to the county in which defendant is prosecuted. (§ 987.8, subd. (e).) The Rules of Professional Conduct also require that defense counsel act competently and avoid interests adverse to the client. (Rules Prof. Conduct, rule 3-110.) If there were grounds to do so defense counsel would have objected to the appointed counsel fee at sentencing. The failure to object forfeited the issue on appeal.

B. *Ability to Pay*

Finally, even if there was not a forfeiture of defendant's claims, the record impliedly supports the trial court's findings. Defendant's decade of unemployment, receipt of food stamps, and time in jail may suggest she would not have the ability to pay

7

under section 1203.1b, subdivision (e). On the other hand, defendant's previous efforts to retain private counsel suggest that she was financially capable of paying attorney fees. Defendant was apparently receiving unreported income and she made no showing to the probation officer about how her disposable income compared to any government assistance she received. Therefore, the probation officer concluded defendant had the ability to pay and the trial court adopted the probation report when it imposed the fees.

On this issue, *People v. McCullough, supra*, 56 Cal.4th at page 597, held: "[w]e conclude that defendant's ability to pay the booking fee here does not present a question of law in the same manner as does a finding of probable cause." Section 1203.1b allows a probation officer to determine a defendant's ability to pay. (§ 1203.1b, subd. (a).) The statute does not require the trial court to conduct a separate hearing. (*People v. Phillips* (1994) 25 Cal.App.4th 62, 68-69, distinguishing *People v. Adams* (1990) 224 Cal.App.3d 705.) In summary, defendant forfeited her challenge to the subject fees but she would lose on the merits if she preserved her ability to appeal.

IV

PROPOSITION 47 RESENTENCING

In the November 4, 2014 general election, the voters passed Proposition 47, the Safe Neighborhoods and Schools Act (the Act). (§ 11701.18.) The parties submitted supplemental briefing addressing the effect of the Act on defendant's conviction. Proposition 47 has two aspects. For defendants who have already been convicted and sentenced, it establishes a procedure for resentencing based on a determination of

8

dangerousness. It also reduces crimes for some offenses to misdemeanors. Section 459.5 makes shoplifting involving less than $950 a misdemeanor.

Defendant argues this court should resentence defendant because the Act applies retroactively, her offense is only a misdemeanor, and the judgment is not yet final. The Attorney General counters that defendant is not entitled to automatic resentencing but must instead petition the trial court for relief under section 1170.18, including a determination of dangerousness.

Retroactivity is the key issue. No part of the Penal Code is retroactive, unless expressly so declared. (§ 3; *People v. Brown* (2012) 54 Cal.4th 314, 319.) The parties agree that the Proposition 47 initiative is silent about its application to cases that are not yet final on appeal, such as defendant's.

In *In re Estrada* (1965) 63 Cal.2d 740, the court established the principle that a reduction in punishment yields an "inevitable" intrinsic inference of retroactive application to all cases not yet final on appeal absent some form of saving clause from which a court can find an intent of prospective application. (*Id.* at pp. 744-745, 747-748.) [¶] However, the *Estrada* principle applies *only* where there is the reduction of a *particular* punishment for a *particular* crime. (*People v. Brown, supra,* 54 Cal.4th at pp. 324-325.) The reduction in punishment for a broad number of crimes (see § 1170.18, subds. (a) & (b)) in Proposition 47 has collective application to a class of different crimes and defendants, and accordingly does not satisfy the restated *Estrada-Brown* criteria for applying an inevitable intrinsic inference of an intent for retroactive application to defendants with cases not yet final on appeal.

9

In *People v. Yearwood* (2013) 213 Cal.App.4th 161, 173-174, the court applied *Estrada* to hold that Proposition 36, enacted in November 2012, was not retroactive and did not apply to defendants sentenced before the effective date of the law. The California Supreme Court is currently reviewing the issue of the retroactivity of Proposition 47 based on *Yearwood*.[4] Given the evolving state of the law, we therefore follow *Yearwood* and *Estrada* and hold that Proposition 47 is not retroactive and does not permit defendant to receive automatic resentencing. Instead, we conclude that she must pursue her statutory remedy to petition the trial court for recall of sentence, resentencing, and a determination of dangerousness. (§ 1170.18; *Yearwood,* at pp. 170, 177.)

V

DISPOSITION

We affirm the judgment, including the imposition of attorney and probation fees.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>CODRINGTON</u>
J.

We concur:

<u>RAMIREZ</u>
P. J.

<u>HOLLENHORST</u>
J.

---

[4] See, e.g., *People v. Conley* (2013) 215 Cal.App.4th 1482, review granted Aug. 14, 2013, S211275 [case fully briefed as of May 2014].