Filed 7/22/15  P. v. Smith CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID M. SMITH,<br><br>    Defendant and Appellant. | 2d Crim. No. B256036<br>(Super. Ct. No. YA050327-01)<br>(Los Angeles County) |

David Maurice Smith appeals from the trial court's order denying his petition for recall of his "three-strikes" sentence and for resentencing pursuant to the Three Strikes Reform Act of 2012.  The order is appealable.  (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 597.)  Appellant contends that the court erroneously concluded that resentencing him would pose an unreasonable risk of danger to public safety.  We affirm.

*Factual and Procedural Background*

In 2002 appellant was convicted of 12 counts of theft from an elder (Pen. Code, § 368, subd. (d))[1] and 12 counts of grand theft.  (§ 487, subd. (a).)  As a "third striker," he was sentenced to prison for 12 consecutive 25-year-to-life terms for an aggregate sentence of 300 years to life.  He appealed, and we affirmed the judgment in an unpublished opinion.  (*People v. Smith* (Dec. 16, 2003) 2d Crim. No. B161815.)

---

[1] All statutory references are to the Penal Code.

In March 2013 appellant filed a petition requesting that his three-strikes sentence be recalled and that he be resentenced in accordance with the Three Strikes Reform Act of 2012. The trial court conducted an evidentiary hearing on the petition. One of the exhibits admitted at the hearing was our 2003 unpublished opinion. The opinion sets forth the underlying facts as follows: "Appellant's conviction[s] [are] based on 12 separate thefts in the Torrance area. All the victims are over the age of 70 and were swindled the same way. A man telephoned 11 victims at their homes, asked the victims to guess who was calling, and pretended to be a relative or family friend stranded at the airport. The man claimed that his wallet was lost or stolen and that he needed $600 to $2,000. He said that a black friend would pick up the money and give a password to identify himself. [¶] After the victims obtained the money, appellant drove to the victim's house in a white Cadillac. Appellant held a handkerchief to his mouth, claimed that he had a bad cold or hay fever, gave the password, and left with the money." The opinion notes that the "twelfth victim" received a call from a woman pretending to be the victim's niece. "The woman said that she lost her wallet, that she needed $1,500, and that a friend would pick up the money. Appellant arrived an hour later in the Cadillac and took $700 from [the victim.]"

*Trial Court's Decision*

The trial court issued a detailed and thorough 15-page memorandum of decision. It considered appellant's criminal record. The court noted that between 1982 and 1983, he was convicted of five counts of forgery in three separate cases and was sentenced to prison for two years. In 1986 he was convicted of two counts of grand theft and was sentenced to prison for two years. The victims were elderly females. In 1987 he was convicted of vandalism. In 1989 he was convicted of felony "petty theft with a prior" and was sentenced to prison for 16 months. The victim was a 74-year-old woman. In 1991 he was convicted of residential burglary, grand theft, and felony petty theft with a prior. He was sentenced to prison for four years. Appellant "defrauded eight mostly elderly victims by telephoning each of the victims and claiming to be a family member or friend in need of emergency money." In 1994 appellant was convicted of possession for sale of

2

a controlled substance. That same year, he was charged with grand theft and residential burglary. He was convicted of residential burglary and was sentenced to prison for two years. Appellant "contacted 11 separate elderly victims by telephone. He told them that he either lost his money or had his wallet stolen and needed money immediately. He then went by and picked up the money himself."

As to the offenses in the instant case (commitment offenses), the trial court observed: "For a 10 month period of time in 2001, [appellant] again focused on elderly victims, who ranged in age from 73 to 91 years of age. [His] modus operandi in each case was exactly the same as previous cases: He telephoned the victims and impersonated a relative in need of emergency money. Once the victims were convinced, [appellant] went to their homes to pick up the money. The total loss to all victims was $16,700."

The trial court also considered appellant's disciplinary record and record of rehabilitation while incarcerated. It noted that, during his incarceration for the commitment offenses, he had "one serious rule violation[] for excessive contact with a visitor [his wife] in 2002." The court continued: "There is no evidence that [appellant] has obtained any vocational skills while in prison, even though such programs are available. There is no evidence of behavior modification therapy or programming to deal with his predatory behavior." Appellant "asserts that his crimes were the result of a severe drug addiction. Yet there is no evidence that while in prison he attend[ed] any form of drug treatment or even just 12 step meetings." "Nowhere in his submission to this court does [appellant] express remorse. . . . [A]ll he talks about is how hard it has been for him and how he is a changed man. Not a word about the victims and how hard it was for them."

The trial court observed that, upon his release from prison, appellant intended to participate in a reintegration program with the assistance of a clinical social worker. Appellant's brother, "a successful banking and insurance executive and small business owner[,] . . . states he has a job waiting for [appellant] upon release."

The court concluded: Appellant "has a horrible record of predatory behavior on particularly vulnerable victims. Virtually all of his criminal convictions involve parting

3

others  - mainly seniors - from their hard-earned money by fraud, cheat and artifice. Overall, at least 38 elderly victims were scammed by [appellant], 26 of them prior to the current commitment offense. . . . His record prior to [the] commitment offense, in the absence of rehabilitative programming, is predictive of current dangerousness."  "In the absence of rehabilitative programming while in prison directed at the root cause of his criminality, the facts of the commitment offense do continue . . . to be predictive of current dangerousness."

The court declared that it "is firmly of the view that if resentenced and released, [appellant] would immediately revert to his predatory behavior and victimize elders again."  Accordingly, the court found "by a preponderance of the evidence that [appellant] is unsuitable for resentencing in that resentencing at this time would pose an unreasonable risk of danger to public safety."

*Proposition 36*

"On November 6, 2012, the California electorate approved Proposition 36, otherwise known as the Three Strikes Reform Act of 2012 (the Act), which became effective the next day.  Before the Act's passage, the Three Strikes law provided that a recidivist offender with two or more qualifying strikes was subject to an indeterminate life sentence if the offender was convicted for any new felony offense.  [Citation.]  The Act amended the Three Strikes law so that an indeterminate life sentence may only be imposed where the offender's third strike is a serious and/or violent felony or where the offender is not eligible for a determinate sentence based on other disqualifying factors.  [Citation.]  The Act also enacted section 1170.126, establishing a procedure for an offender serving an indeterminate life sentence for a third strike conviction that is not defined as a serious and/or violent felony to file a petition for recall of sentence.  [Citation.]"  (*Teal v. Superior Court*, *supra*, 60 Cal.4th at pp. 596-597, fn. omitted.)

Where, as here, the petitioner meets the criteria for resentencing, the petitioner "shall be resentenced [as a second strike offender] . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f).)  "In exercising its discretion . . . , the court may

4

consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶ (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (*Id*., , subd. (g).

*Burden of Proof and Standard of Review*

The People must prove dangerousness by a preponderance of the evidence. (*People v. Flores* (2014) 227 Cal.App.4th `1070, 1075-1076.) Because section 1170.126, subdivision (f) provides that the court may, "in its discretion," determine that resentencing would be dangerous to public safety, we review such a determination for abuse of discretion. The party challenging the determination has the burden of showing that it "is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

*The Trial Court Did Not Misinterpret the*

*Supreme Court's Decision in Lawrence*

The trial court concluded that its decision is "identical for all practical purposes to the decision that the Board of Parole Hearings . . . make[s] when a life-term inmate is up for his or her Initial Parole Hearing." Appellant contends that the trial court "incorrectly interpreted the parole suitability standard of current dangerousness as set out by our Supreme Court in *In re Lawrence* [(2008) 44 Cal.4th 1181]." Appellant's contention is based on the trial court's statement, "The immutable factors [i.e., the circumstances of the commitment offenses and petitioner's prior criminal record] tend, over time and in the face of substantial rehabilitative programming, to be less and less predictive of current dangerousness." This statement is consistent with *Lawrence's* recognition of the importance of rehabilitative programming. (*Id*., at p. 1226 [parole applicant "participated in many years of rehabilitative programming specifically tailored to address the circumstances that led to her commission of the crime, . . . leading to substantial insight on her part into both the behavior that led to the murder and her own responsibility for

the crime"].)  We reject appellant's assertion that, contrary to *Lawrence*, the trial court "require[d] rehabilitative programming as the sole method of overcoming the [gravity of the] immutable factor[s] of [appellant's] commitment offense[s]" and prior criminal record.

*Nexus Between Evidence and Current Dangerousness*

Appellant argues that the trial court determined he was dangerous because it found that while in prison he "did not improve himself educationally, did not obtain vocational training, and did not enter a program to address his heroin addiction."  Appellant asserts, "These findings did not provide a nexus between the evidence and the ultimate question of current dangerousness."  (See *In re Shaputis* (2011) 53 Cal.4th 192, 221 [in reviewing the Board of Parole Hearings' finding of current dangerousness, "the court considers whether there is a rational nexus between the evidence and the ultimate determination of current dangerousness"].)

The trial court's finding of dangerousness was not based solely on appellant's failure to participate in rehabilitative programs.  It was also based on his prior criminal record, lack of remorse, and the circumstances of the commitment offenses.  There is a rational nexus between these factors and the determination of current dangerousness.

*Lack of Violence*

Appellant asserts that "[t]he complete lack of any violence in [his] record," together with other evidence, "proved under any standard that he does not pose an unreasonable risk of danger to the public."  Section 1170.126 does not require the recall of a sentence unless an eligible petitioner poses an unreasonable risk of committing acts of violence.  The standard is "unreasonable risk of danger to public safety."  (***Id***., subd. (f).)  In view of appellant's long and extensive record of committing criminal offenses against the elderly, the trial court did not abuse its discretion by concluding that he "would pose an unreasonable risk of danger to public safety."  (***Ibid***.)

*Trial Court's Alleged Failure to Review Entire Record*

Appellant contends that, "by failing to conduct a review of [his] entire record, the court based its decision on the immutable fact of [his] criminal history, rather than

6

assessing whether [he] 'currently' posed an unreasonable risk of danger." The court's memorandum of decision shows that it reviewed appellant's entire record. Its decision was based not just on his criminal history, but also on his disciplinary record and record of rehabilitation while incarcerated, his lack of remorse, and the circumstances of the commitment offenses. The court also took into consideration appellant's post-release plans, including his intention to participate in a reintegration program and his brother's offer of employment.

Appellant asserts that "[t]he trial court was obligated to consider . . . his . . . advanced age[] and poor health." Appellant was not at an advanced age. He was born in 1959. Appellant states, "In 2004, [he] was diagnosed with diabetes and hypertension." These health problems do not render him less likely to defraud elderly persons.

*Alleged Right to Jury Trial and Finding Beyond a Reasonable Doubt*

Appellant argues: His "Sixth Amendment[] rights were violated by the trial court's finding [by a preponderance of the evidence] that [he] posed an unreasonable risk of danger to public safety. The finding should have been made by a jury under the beyond a reasonable doubt standard." Appellant notes, "Division Three of this Appellate District arrived at a different conclusion in *People v. Superior Court (Kaulick)* [(2013)] 215 Cal.App.4th 1279[, 1303-1305]." Appellant "submits that *Kaulick* was wrongly decided." "We think [*Kaulick*] is well written, correct, and could serve as a model for opinion writing. [Appellant] has not persuaded us that *Kaulick* was wrongly decided. We decline the request to disagree with the *Kaulick* opinion." (*People v. Flores, supra,* 227 Cal.App.4th at p. 1076.)

*Proposition 47*

At the general election on November 4, 2014, the voters approved Proposition 47, which enacted the Safe Neighborhoods and School Act. Section 1170.18, subdivision (c) of Proposition 47 provides: "*As used throughout this Code*, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (Italics added.) In his supplemental opening brief,

7

appellant contends that this definition of "unreasonable risk of danger to public safety" applies to the same phrase in section 1170.126, subdivision (f) of Proposition 36.

We need not decide this issue. Even if the Proposition 47 definition applies to Proposition 36, the definition does not apply retroactively to appellant's petition. The trial court denied his petition in March 2014, months before the voters approved Proposition 47. Section 3 of the Penal Code provides: "No part of it is retroactive, unless expressly so declared." "[T]he language of section 3 erects a strong presumption of prospective operation, codifying the principle that, 'in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.' [Citations.]" (*People v. Brown* (2012) 54 Cal.4th 314, 324.) Proposition 47 does not contain an express retroactivity provision. It is not clear from extrinsic sources that the voters intended the proposition's definition of "unreasonable risk of danger to public safety" to apply retroactively to prior determinations of dangerousness under Proposition 36.

*In re Estrada* (1965) 63 Cal.2d 740, does not require retroactive operation because the Proposition 47 definition of "unreasonable risk of danger to public safety" does not mitigate the punishment for a criminal offense. "*Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments. [Citation.]" (*People v. Brown*, *supra*, 54 Cal.4th at p. 324.)[2]

---

[2] The issue of the application of Proposition 47's definition to Proposition 36 petitions is pending before our California Supreme Court in *People v. Chaney*, No. S223676, and *People v. Valencia*, No. S223825. According to the Supreme Court's news release of April 17, 2015, these cases "present the following issue: Does the definition of 'unreasonable risk of danger to public safety' (Pen. Code, § 1170.18, subd. (c)) under Proposition 47 . . . apply on retroactivity or other grounds to resentencing under the Three Strikes Reform Act of 2012 (Pen. Code, § 1170.126)?"

*Disposition*

The trial court's denial of appellant's section 1170.126 petition is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.


PERREN, J.

9

William C. Ryan, Judge

Superior Court County of Los Angeles

_____

Nancy L, Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Noah P. Hill, Mary Sanchez and Garetta G. Gorlitsky, Deputy Attorneys General, for Plaintiff and Respondent.