Filed 4/20/22  P. v. Camacho CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FRANK CAMACHO,<br><br>Defendant and Appellant. | C090113<br><br>(Super. Ct. No. 15F01261)<br><br>OPINION ON TRANSFER |

Defendant Frank Camacho and codefendants Joshua Parrish and Adam Villa were convicted of attempted murder, attempted robbery, and related firearm crimes.  On appeal, defendant argued his conviction for attempted murder must be reversed in the wake of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) (Stats. 2018, ch. 1015).  Defendant also contended his custody credits were miscalculated in the trial court.

1

In an unpublished opinion, we modified the judgment relative to defendant's custody credits and affirmed the judgment as modified. (*People v. Camacho* (Apr. 12, 2021, C090113 [nonpub. opn.].) The Supreme Court granted review and transferred the matter back to us with directions to vacate our decision and reconsider the cause in light of Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) (Stats. 2021, ch. 551).

In supplemental briefing on transfer of this case, defendant continues to argue his conviction for attempted murder must be reversed or, in the alternative, remanded for resentencing in light of Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill 518) (Stats. 2021, ch. 441, § 1). The People concede defendant's conviction should be reversed in light of Senate Bill 775, thus rendering moot defendant's contention regarding Assembly Bill 518. We agree.

Defendant further contends the matter should be remanded for resentencing in light of Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Assembly Bill 124) (Stats. 2021 ch. 695, § 5.3) and Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81) (Stats. 2021, ch. 721, § 1). Again, the People concede the issue and agree defendant is entitled to the benefit of these recent amendments at resentencing.

We accept the People's concessions and will reverse defendant's conviction for attempted murder and remand the matter with instructions to the trial court to conduct a full resentencing. (See *People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.)

BACKGROUND

Given defendant's contentions on appeal, we provide only a brief recitation of the facts.[1] In February 2015, defendant, Parrish, and Villa arrived at the victim's home under the pretext of purchasing marijuana. When the victim opened the door, Villa pointed a

---

[1] Defendant was tried alongside his codefendants Parrish and Villa. This factual background is taken from our prior decision in *People v. Villa* (July 14, 2020, C089392) [nonpub. opn.], review granted September 16, 2020, S263899.

gun in his face and a violent melee ensued. The victim, who was unarmed, began fighting with Villa over the gun. Meanwhile, defendant and Parrish, who also were armed, pushed their way inside. During the tussle, the three intruders each shot at the victim a total of five to 10 times. A friend of the victim, who was visiting at the time of the incident, also was badly beaten. Eventually, the victim chased the three intruders outside and the men left in a waiting vehicle.

The victim suffered several gunshot wounds to his legs, abdomen, buttocks, bladder, stomach, and back. These injuries required the victim to undergo multiple surgeries.

At trial, the court instructed the jury, in relevant part, as follows:

"A person may be guilty of a crime in two ways.

"One, he or she may have directly committed the crime. I will call that person the perpetrator.

"Two, he or she may have aided and abetted a person who directly committed the crime.

"A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator.

"Under some circumstances[,] if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." (CALCRIM No. 400, as given.)

The court next instructed the jury on direct aiding and abetting principles, as well as the elements of attempted murder and attempted robbery. The court then explained the natural and probable consequences doctrine:

"Under certain circumstances[,] a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time.

"To prove that the defendant is guilty of attempted murder, the People must prove that one, the defendant is guilty of attempted robbery.

3

"Two, during the commission of attempted robbery[,] a co-participant in that attempted robbery committed the crime of attempted murder.

"And three, under all of the circumstances[,] a reasonable person in the defendant's position would have known that the commission of attempted murder was a natural and probable consequence of the commission of the attempted robbery.  [¶]  . . . [¶]

"A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing usual intervenes."  (CALCRIM No. 402, as given.)

The prosecutor began his closing argument as follows:  "Ladies and Gentlemen, we're at our noon hour I'm going to tell you why that during the course of this attempted robbery it's a natural and probable consequence that these individuals are gonna pull a gun on [the victim] and shoot him six times."  The prosecutor then told the jury, "What's important . . . is there is no need, absolutely zero need to say who did the attempted murder.  [¶]  If some of the three did it and there is a natural and probable consequence of a robbery, they're guilty."

The prosecutor further argued as follows:  "[CALCRIM No.] 400 is basically saying that you're a perpetrator.  You did it.

"[CALCRIM No.] 401 says you aid and abet it.  You aid and abet somebody in the attempted murder.

"Okay.  When you're coming in and you're forcing your way in on them, . . . you're guilty of attempted murder.  Of course, the shooter obviously is attempted murder.

"But [CALCRIM No.] 402 here is the natural and probable consequence.  And this is—this is clearly the liability that lies on everybody in this case.

"Is that when you commit an attempted robbery in somebody's home with three or more individuals and guns, what do you thinks [*sic*] gonna happen?

4

"Precisely what did happen. Is [the victim] going to resist. He's going to try to save his life, and gun play is going to go—I mean, it—harken[s] back to the argument I made a couple minutes ago.

"Why do you bring a gun? You bring a gun to exact fear on somebody and defend against yourself if somebody resists you.

"It is a natural and probable consequence of a robbery—attempted robbery. Okay. It is what is likely to happen as evidence 'cuz it did happen here. Okay. Is precisely what happened. So this is that liability."

The jury subsequently found defendant guilty of attempted murder and attempted robbery while entering a structure and acting in concert. (Pen. Code, §§ 664, 187, subd. (a), 664, 211, 213, subd. (a)(1)(A).)[2]

In July 2019, the trial court sentenced defendant to state prison for an aggregate term of 27 years, as follows: seven years for the attempted murder conviction, plus 20 years consecutive for a firearm enhancement, plus six years consecutive for the attempted robbery conviction (stayed under § 654), plus another 20 years for a firearm enhancement (stayed under § 654).

## DISCUSSION

A.    *Senate Bill 775*

"Senate Bill 775 amended section 1170.95. As relevant, it now reads: 'A person convicted of murder, attempted murder, or manslaughter whose conviction is not final may challenge on direct appeal the validity of that conviction based on the changes made to Sections 188 and 189 by Senate Bill 1437 (Chapter 1015 of the Statutes of 2018).' (§ 11709.95, subd. (g).) Because section 188, subdivision (a)(3), prohibits imputing malice based solely on participation in a crime, the natural and probable consequences

---

[2]    Undesignated statutory references are to the Penal Code.

doctrine cannot prove an accomplice committed attempted murder. Accordingly, the natural and probable consequences doctrine theory urged in the trial court is now invalid." (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 196, fn. omitted (*Sanchez*).)

The People concede it was error to instruct the jury with the natural and probable consequences doctrine as a theory of liability; they also concede the error was *not* harmless. (See *People v. Chiu* (2014) 59 Cal.4th 155, 167, superseded on other issues by Senate Bill 1437, as stated in *People v. Lewis* (2021) 11 Cal.5th 952, 959; *Sanchez, supra*, 75 Cal.App.5th at p. 196.) We agree.

When a jury is instructed on two theories of guilt, one of which is invalid, "[w]e presume the legally invalid theory infected the verdict because jurors are not ' " 'equipped to determine whether a particular theory of conviction submitted to them is contrary to law . . . .' " ' (*In re Martinez* (2017) 3 Cal.5th 1216, 1224.) We 'must reverse the conviction[s] unless, after examining the entire cause, including the evidence, and considering all relevant circumstances,' we determine the error is 'harmless beyond a reasonable doubt.' (*People v. Aledamat* (2019) 8 Cal.5th 1. 13.)" (*Sanchez, supra*, 75 Cal.App.5th 196-197.)

Here, the trial court instructed the jury on direct aiding and abetting, as well as the natural and probable consequences doctrine, as alternate theories of liability for attempted murder. The prosecutor's closing argument focused the jury on the natural and probable consequences doctrine. The prosecutor told the jury that, through his argument, he would demonstrate the attempted murder committed by defendant and his codefendants was the natural and probable consequence of their attempted robbery. He argued that liability for attempted murder in this case lay not on the direct perpetrator, who the jury need not identify, but on all three defendants as the natural and probable consequence of their attempted robbery. The jury then returned a general verdict finding defendant guilty of attempted murder and attempted robbery.

6

Our review of the record did not offer any insight into "the jury's deliberations and the theory underlying the verdict." (*Sanchez, supra*, 75 Cal.App.5th at p. 197.) Accordingly, we accept the People's concession and conclude the error in instructing the jury on the natural and probable consequences doctrine was not harmless beyond a reasonable doubt. Defendant's conviction for attempted murder must, therefore, be reversed and the People given the opportunity to retry defendant on the attempted murder charge within the time limit prescribed by law.[3] (See *People v. Chiu, supra*, 59 Cal.4th at p. 168.)

### B.     *Assembly Bill 124*

Assembly Bill 124 became effective January 1, 2022. (Stats. 2021, ch. 695, § 5.3; Stats. 2021, ch. 731, § 1.3 [Senate Bill No. 567 (2021-2022 Reg. Sess.)].) Among other things, Assembly Bill 124 sets a presumption that the trial court will impose the lower term under enumerated circumstances, including where an offender's childhood trauma or youth were contributing factors in the offense. (§ 1170, subd. (b)(6); Stats. 2021, ch. 695, § 5.3.) Defendant argues he is entitled to the benefit of this legislation on remand. The People also concede this issue.

Under *In re Estrada* (1965) 63 Cal.2d 740, "[w]hen the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*People v. Brown* (2012) 54 Cal.4th 314, 323, fn. omitted.) This presumption has been extended to amendments providing trial courts discretion to impose lesser punishment at sentencing and amendments reducing the possible punishment for classes of persons. (See, e.g., *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303-304; *People v. Garcia* (2018)

---

[3]     Because we reverse defendant's conviction for attempted murder, defendant's argument regarding recently enacted Assembly Bill 518 is moot.

28 Cal.App.5th 961, 971-972; *People v. Valenzuela* (2018) 23 Cal.App.5th 82, 87-88.) Nothing in Assembly Bill 124 suggests legislative intent that the amendments apply prospectively only, and defendant's case is not yet final. (*People v. Vieira* (2005) 35 Cal.4th 264, 305-306.)

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' [Citations.]" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) There is no clear indication what sentencing decisions the trial court would have made if it was bound by the new requirements of Assembly Bill 124, although the court did identify defendant's youthful age as the single mitigating factor. Thus, we accept the People's concession.

On remand, defendant is entitled to a full resentencing incorporating the new legislative changes, including those brought about by Assembly Bill 124. (See *People v. Buycks, supra*, 5 Cal.5th at p. 896, fn. 15.)

C.  *Senate Bill 81*

The People also concede that defendant is entitled to have the trial court consider its newfound discretion under Senate Bill 81 when he is resentenced on remand. Senate Bill 81 amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674; see Stats. 2021, ch. 721, § 1.) Section 1385, subdivision (c) now provides: "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if

8

dismissal of that enhancement is prohibited by any initiative statute.  [¶]  (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances . . . are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."

Senate Bill 81 does state section 1385, subdivision (c) shall apply to "sentencings occurring after the effective date of the act that added this subdivision."  (See § 1385, subd. (c)(7).)  Defendant, however, will be resentenced on remand and section 1385, subdivision (c) also applies to resentencing proceedings after the effective date of the act. (See *People v. Sek, supra*, 74 Cal.App.5th at p. 674.)

D.     *Custody credits*

Defendant also contends his custody credits were miscalculated in the trial court. Defendant was arrested on April 16, 2015, and remained in custody until July 18, 2019, when he was sentenced, for a total of 1,555 days.  The trial court, however, awarded defendant only 1,554 days of actual custody credits.  The People concede this was error and agree defendant is entitled to an additional day of custody credit.  We accept the People's concession and modify the judgment accordingly.

DISPOSITION

Defendant's attempted murder conviction is reversed and the finding as to the associated firearm enhancement is vacated.  Defendant's attempted robbery conviction and the finding as to the associated firearm enhancement are affirmed; his custody credits are modified to a total of 1,555 days.

We remand the matter to the trial court with instructions that the People may, if they choose, retry defendant on the attempted murder charge within the time limit prescribed by law.  If the People choose not to retry, the trial court is directed to

9

resentence defendant fully on his remaining conviction for attempted robbery, taking into consideration recently enacted Assembly Bill 124 and Senate Bill 81.


           KRAUSE         , J.


We concur:


      MAURO         , Acting P. J.


      RENNER        , J.