Filed 11/15/24  P. v. Cummings CA2/8
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B316538 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA148874) |
| v. | |
| CARL CORNELIUS CUMMINGS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Tammy Chung Ryu, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Carl Cornelius Cummings kidnapped and committed a violent assault on his longtime girlfriend which included chasing her in his car and hitting her. He was convicted by jury of kidnapping, assault with a deadly weapon and several other felonies, and sentenced to 14 years four months in prison. In his appeal from the judgment of conviction, defendant contended the prosecutor committed misconduct during closing argument, his trial counsel was ineffective for failing to object to the misconduct, and the upper term sentence on the kidnapping count should be reduced to a middle term sentence in light of the passage of Senate Bill 567 (2021–2022 Reg. Sess.) which took effect while this appeal was pending.

We affirmed the judgment of conviction and found no sentencing error. Defendant petitioned the Supreme Court for review. The Supreme Court transferred the matter to this court with directions to vacate our decision and reconsider the cause in light of *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*). Having complied with the directions of the Supreme Court, and for the reasons stated at pages 12 through 13 of this opinion, we again affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant began dating A.H. in 2013 when they were in high school. They had a relationship for about six years, broken up by intermittent periods of separation when A.H. tried to stay away from defendant. They have two children together, a daughter (A.C.) and a son (C.C.). We refer to the victim and her two minor children by their initials to protect their privacy.

A.H. described the relationship as "fun" in the beginning but eventually defendant began to hit and abuse her. She

2

became fearful of him and regulated her behavior to the point she felt like a "robot" who did what defendant wanted in order to keep him from getting angry and hitting her. Defendant often threatened to kill her or take her children from her.

The hitting escalated into more violent assaults. At their daughter's third birthday party, defendant got angry about something and choked A.H. until she began to feel weak and almost blacked out. Later, when A.H. was pregnant with their son, she tried to leave the house to buy a Halloween costume for their daughter, and defendant beat her repeatedly, accusing her of wanting to meet up with another man. Defendant kicked her stomach and told her he hoped the baby died.

Most of the time, A.H. did not report the abuse to law enforcement because she was scared of defendant and afraid she would lose her children if the authorities got involved. However, in 2017, she reported two incidents, one in March and one in May. The first incident resulted in an investigation by the Los Angeles County Department of Children and Family Services because the abuse occurred while the children were present.

The incident in May 2017 occurred in the presence of A.H.'s mother. Defendant hit and kicked A.H. repeatedly and broke numerous windows in the home. Defendant was arrested, convicted of injuring A.H. in violation of Penal Code section 273.5, and spent a few months in jail. Upon his release, A.H. agreed to get back together with him because she believed he was going to change. However, within a short period of time, defendant resumed his abusive behavior.

By the fall of 2018, defendant and A.H. were no longer living together but A.H. would meet him sometimes with the children. On one such occasion, A.H. drove to meet defendant

and took their infant son with her.  Defendant demanded A.H. have sex with him in the car.  When she said no, defendant struck her repeatedly in the face and torso and forced himself on her, with their son still seated in his car seat.  The next day, defendant came to her home and demanded she come down to the car.  After she agreed to talk with him, defendant raped her again.  A.H., at the urging of her mother, eventually reported the rapes.  She admitted she made inconsistent and incomplete statements to the police about the rapes because she feared her children might be taken away since she had agreed both times to see defendant.

In April 2019, A.H. was living in Long Beach but still seeing defendant in public places away from her home.  For several months, A.H. had been trying to talk to defendant about their relationship and her belief that they should only be friends.  On April 25, defendant called A.H. and demanded she come see him.  A.H. agreed to meet defendant at a Jack in the Box restaurant in Los Angeles.  She was scared but did not want him coming to her home.  A.H. arrived at the restaurant with their five-year-old daughter and two-year-old son in the car with her.

Defendant got into the front passenger seat of A.H.'s car.  Defendant is six feet five inches tall and A.H. is just five feet tall.  A.H. went inside the Jack in the Box to get food for the children and made other excuses to go inside several times, like taking the children to the restroom, because she was fearful of defendant.  After looking at A.H.'s phone, defendant got angry.  He accused A.H. of having a man's phone number noted on her phone.

Multiple videos from nearby security cameras captured the assault that ensued and were shown to the jury.  A.H. tried to escape defendant several times, at first running back inside the

Jack in the Box. Defendant followed A.H. inside, hit her, picked her up and threw her to the ground. He grabbed her again and carried her back to the car. A.H.'s top was pulled off in the struggle. She escaped the car again and ran, half naked out into the street, trying to get help from passing cars and people inside a liquor store. Defendant then used A.H.'s car, with the children still in the back seat, to chase down A.H. He drove across traffic to the wrong side of the street and struck A.H. with the car. She sustained numerous injuries and was taken to the hospital.

Defendant was charged, by amended information, with eight felonies, six related to the April 2019 incident and two related to the 2018 rape: kidnapping (Pen. Code, § 207, subd. (a); count 1); two counts of injuring a spouse/girlfriend with a prior conviction (§ 273.5, subd. (f)(1); counts 2 & 9); two counts of child abuse (§ 273a, subd. (a); counts 3 & 4); assault with a deadly weapon (§ 245, subd. (a)(1); count 6); attempted murder (§§ 187, subd. (a), 664; count 7); and forcible rape (§ 261, subd. (a)(2); count 8). It was alleged as to counts 1, 2, 6 and 7 that defendant personally used a car as a deadly weapon in the commission of the offenses. (§ 12022, subd. (b)(1).) (Count 5 was dismissed for insufficient evidence at the preliminary hearing.)

At the close of the prosecution's case, defendant stipulated to his 2017 conviction for a violation of Penal Code section 273.5 where A.H. was the victim. Defendant did not present any witnesses in his defense.

The jury found defendant guilty on all counts except attempted murder and found true the special allegations. The court sentenced defendant to 14 years four months in prison, calculated as follows: an eight-year upper term on count 1 (kidnapping), the base term; a consecutive 20-month term on

count 2 (injury to girlfriend with prior conviction), one-third the midterm plus four months for the deadly weapon enhancement; a consecutive 16-month term on each of counts 3 and 4 (child abuse), one-third the midterm; and a consecutive two-year term on count 8 (rape), one-third the midterm. The court imposed and stayed sentence on counts 6 and 9 pursuant to Penal Code section 654. The court imposed a 10-year protective order and awarded defendant 1,076 days of presentence custody credits.

After this court affirmed defendant's judgment of conviction and sentence, the Supreme Court granted his petition for review. The Supreme Court has now transferred the matter for us to reconsider the sentencing issues defendant raised challenging the upper term sentence on the kidnapping conviction in light of *Lynch, supra,* 16 Cal.5th 730. We have done so in part 2 of the Discussion, *post,* and conclude there was no sentencing error, and even if there were, it was harmless beyond a reasonable doubt. There is no change to part 1 of the Discussion.

## DISCUSSION

### 1. Prosecutorial Misconduct

Defendant contends the prosecutor committed misconduct during closing argument by improperly vouching for the credibility of the victim by arguing that law enforcement and the district attorney's office "failed" her when she previously reported domestic abuse in 2017. Defendant says because no evidence was put on about the handling and investigation of the prior incidents, the jury was left to believe the prosecutor had some insight or private knowledge about what had occurred that resulted in the system purportedly failing A.H. Defendant says the prosecutor's vouching was particularly prejudicial because

6

the prosecutor exhorted the jury to find defendant guilty and not allow the system to fail A.H. again.

It is undisputed defendant did not object to the statements he now contends constitute improper vouching. Defendant has therefore forfeited the contention on appeal. "It is well settled that making a timely and specific objection at trial, and requesting the jury be admonished . . . , is a necessary prerequisite to preserve a claim of prosecutorial misconduct for appeal." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1328; accord, *People v. Huggins* (2006) 38 Cal.4th 175, 205 (*Huggins*).)

In any event, no improper vouching occurred. Improper vouching by a prosecutor about the strength of the prosecution's case generally " ' "involves an attempt to bolster a witness by reference to facts outside the record." ' " (*Huggins*, *supra*, 38 Cal.4th at p. 206.) Misconduct during argument is judged by considering the argument as a whole and in light of the entire evidentiary record. (*People v. Morales* (2001) 25 Cal.4th 34, 47.)

Here, defense counsel, during his argument, said A.H. had lied or at least changed her story about the 2018 rapes and also suggested she likely embellished how many times defendant hit her in the face given the lack of significant injuries to her face. During rebuttal, the prosecutor responded to this argument by conceding that A.H. had not been entirely truthful with law enforcement because when she had previously reported abuse in 2017, the system failed her. The prosecutor then argued reasonable inferences from the record that could account for A.H. changing her story or being less than truthful on different occasions. This was permissible argument based directly on A.H.'s testimony in which she admitted she had not always been forthcoming with law enforcement about defendant's conduct and

7

had in fact lied about certain aspects of the 2018 rapes because she feared the authorities would take away her children for continuing to spend time with defendant despite his prior acts of abuse.

As *Huggins* aptly states, it is not misconduct "to ask the jury to believe the prosecution's version of events as drawn from the evidence. Closing argument in a criminal trial is nothing more than a request, albeit usually lengthy and presented in narrative form, to believe each party's interpretation, proved or logically inferred from the evidence, of the events that led to the trial." (*Huggins*, *supra*, 38 Cal.4th at p. 207.) That is what the prosecutor did here.

Defendant also contends his trial counsel was ineffective for failing to object to the prosecutor's argument. Defendant's burden to establish ineffective assistance on direct appeal is significant. Defendant must demonstrate "both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (*People v. Cudjo* (1993) 6 Cal.4th 585, 623, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–696.) Moreover, counsel's failure to object rarely constitutes ineffective assistance. (*Huggins*, *supra*, 38 Cal.4th at p. 206.) And, where, as here, the record on appeal does not show why counsel failed to object " 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal.' " (*Ibid.*)

Defendant cannot establish either element of an ineffective assistance claim for the simple reason that, as we explained *ante*,

there was no improper vouching that warranted an objection. Any objection would have been overruled.

## 2.     The Upper Term Sentence

Senate Bill 567 went into effect on January 1, 2022, while this appeal was pending.  (Stats. 2021, ch. 731, § 1.3.)  The legislation made significant changes to the law under which defendant was sentenced.  Under former Penal Code section 1170, the trial court had the discretion to consider relevant aggravating and mitigating factors and to choose whether to impose an upper, middle or lower term sentence.  The trial court here exercised its discretion to impose an eight-year upper term sentence on the kidnapping count (count 1), explaining its reasoning on the record in accordance with the law as it existed at that time.

Penal Code section 1170, subdivision (b)(2), as amended by Senate Bill 567, now provides that the trial court must impose the presumptive middle term of a sentencing triad unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  There is one exception.  Section 1170, subdivision (b)(3) provides that "[n]otwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (See *Lynch, supra*, 16 Cal.5th at p. 767.)

As the People concede, the changes effected by Senate Bill 567 apply retroactively to defendant's case as they are

ameliorative in nature and therefore apply to all nonfinal appeals. (See, e.g., *People v. Brown* (2012) 54 Cal.4th 314, 323 [discussing rule of *In re Estrada* (1965) 63 Cal.2d 740].)

Defendant argues the upper term sentence imposed on count 1 under the former version of Penal Code section 1170 is not valid under *Lynch, supra,* 16 Cal.5th 730. The People contend that defendant has not suffered prejudice as any error in imposing the upper term sentence is harmless beyond a reasonable doubt.

The Supreme Court held in *Lynch* "that under the current statute a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established. The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements. If the reviewing court cannot so determine, applying the *Chapman* [*v. California* (1967) 386 U.S. 18] standard of review, the defendant is entitled to a remand for resentencing." (*Lynch, supra*, 16 Cal.5th at p. 768.)

We conclude the record is clear that under *Lynch*, any error was harmless.

At the sentencing hearing, the court commented on the trial evidence after hearing argument from counsel. The court said it found the case to be a difficult one and that it was miraculous A.H. did not sustain greater injuries. The court referred to some of the more egregious aspects of the April 2019 assault and noted that "the factors in aggravation are

10

overwhelming." The court largely focused on A.H. being a particularly vulnerable victim who was "tiny" compared to defendant and in a "desperate" situation—a cycle of violence that often resulted in her being assaulted in front of her young children. The court also cited defendant's previous assaults on A.H. and that defendant was on probation at the time the current charges took place.

The court allowed defendant to make some remarks and then imposed sentence. The court deemed the kidnapping count (count 1) to be the base term and imposed the upper term of eight years based on the fact that A.H. was a particularly vulnerable victim. (Cal. Rules of Court, rule 4.421(a)(3).) Earlier in the hearing, the court identified several other aggravating factors, including that the crime involved great violence, the defendant used a weapon during the commission of the crime, and defendant was on probation when the crime was committed. (Rule 4.421(a)(1), (2) & (b)(4).)

The evidence was overwhelming and uncontradicted that defendant was significantly larger than A.H., who by all accounts was diminutive, and that defendant committed the violent assault on A.H.—an assault the violence of which was captured on video from multiple angles, and which occurred almost entirely in front of A.H.'s minor children. The defense case was focused mainly on arguing that defendant's actions showed rash, impulsive and out-of-control behavior and no premeditation or intent to kill A.H. The jury acquitted defendant of attempted murder, but otherwise convicted him on all charges.

We conclude from this record that it is beyond question the jury would have found beyond a reasonable doubt that A.H. was a particularly vulnerable victim and that the assault involved great

violence.  As for the use of a car as a deadly weapon, the jury found true that special allegation.  And defendant stipulated to his prior 2017 conviction.  Defendant was in fact on probation at the time of the assault, and therefore the jury would have found that fact was true beyond a reasonable doubt if it had been presented to them.

In his supplemental brief on remand from the Supreme Court, defendant argues this court's prior opinion failed to address all the aggravating factors cited by the trial court to justify the upper term sentence on the kidnapping count and that "it cannot be known beyond a reasonable doubt that the jury would have found true 'all' of the aggravating facts actually cited by the court."  Defendant identifies two findings by the trial court that he characterizes as additional aggravating factors which our opinion did not address, as follows:  "the obvious and irrelevant fact that the victim 'did not want to go' with [defendant] while being kidnapped, and the court's observation that 'Who knows what would have happened beyond that if [defendant] did not regain control of himself,' " quoting page 408 of the second reporter's transcript.  We disagree with defendant's characterization of these findings by the court as "additional aggravating facts" actually cited by the court in selecting the high term that the jury did not find true beyond a reasonable doubt.

The jury necessarily found true beyond a reasonable doubt the first fact defendant cites, that A.H. did not want to go with defendant when he kidnapped her.  The jury was instructed on the elements of kidnapping, each of which it had to find true beyond a reasonable doubt in order to convict defendant, as they did, of kidnapping.  An essential element of kidnapping is that the victim "did not consent to the movement."  (CALCRIM

No. 1215.) The court's statement that A.H. did not want to go with defendant when he kidnapped her was not an additional aggravating fact; instead, it was an element of the crime of kidnapping, and the court did not err by reciting that fact in the course of its sentencing colloquy.

The court's reference to what might have happened if defendant had not regained control of himself echoed previous findings by the court during its lengthy sentencing colloquy describing the facts demonstrating A.H.'s extreme vulnerability. These statements were not additional aggravating facts, but were the court's description of the events captured on videotape which the jury viewed, including that "it's actually fortunate or miraculous that [A.H.] did not break her neck or any other part of her body"; and that "[i]t is another miracle that [A.H.] did not actually suffer more injuries. That she actually was able to get up from being run over and run into the liquor store. Mind you she's still naked on top, and she's holding on to her pants. But you could see that her pants are clearly down. So that is a very desperate situation for a victim, for a woman, for a mother . . . ." The court also previously observed the jury may have acquitted defendant of attempted murder because he "may not have been in complete control over himself because he was so angry or upset about something." If anything, the court's reference to defendant regaining control of himself was a mitigating factor that the court nonetheless found to be outweighed by the particularly extreme vulnerability of A.H.

There was no sentencing error in violation of *Lynch, supra,* 16 Cal.5th 730, and assuming there was error, it was harmless beyond a reasonable doubt.

13

**DISPOSITION**

The judgment of conviction is affirmed.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


VIRAMONTES, J.